In re:

ROBB & STUCKY LIMITED LLLP,
a Florida Limited Liability Limited Partnership,[1]

        Debtor.

Case No. 8:11-bk-02801 (CED)
Chapter 11

_____/

**ORDER (1) AUTHORIZING DEBTOR IN POSSESSION TO OBTAIN INTERIM
FINANCING, GRANT SECURITY INTERESTS AND ACCORD PRIORITY STATUS
PURSUANT TO 11 U.S.C. §§ 361, 364(c) AND 364(d); (2) GIVING NOTICE OF FINAL
HEARING PURSUANT TO BANKRUPTCY RULE 4001(b)(2) AND (c)(2);
AND (3) MODIFYING AUTOMATIC STAY**

This matter is before the Court on the Motion (the "*Motion*") of **ROBB & STUCKY**

**LIMITED LLLP**, a Florida limited liability partnership, as debtor and debtor in possession in

the above-captioned Chapter 11 case ("*Debtor*"), requesting entry of an order (1) authorizing

Debtor to obtain financing and other extensions of credit from **Bank of America, N.A.** ("*BofA*")

(in its capacity as post-petition lender, the "*DIP Lender*"), grant priming security interests and

liens and accord superpriority claim status in favor of DIP Lender pursuant to Sections 361,

364(c) and 364(d) of Title 11 of the United States Code (the "*Bankruptcy Code*"); (2) giving

notice of a final hearing pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2); and (3) modifying

the automatic stay.

Based upon the Court's review of the Motion and all matters brought to the Court's

attention at the interim hearing, which was held on February 23, 2011, pursuant to Bankruptcy

Rule 4001(b)(2) and (c)(2) (the "*Interim Hearing*"), and after due deliberation and

consideration, the Court makes the following findings of fact and conclusions of law applicable

---

[1] The last four digits of the taxpayer identification number for Debtor are 6415. The mailing address for
Debtor is 14550 Plantation Road, Fort Myers, Florida 33912.

to the financing sought by Debtor from DIP Lender (to the extent any findings of fact constitute conclusions of law, they are adopted as such, and *vice versa*):

THE COURT HEREBY FINDS AND DETERMINES:

A.     Petition Date.  On February 18, 2011 (the "*Petition Date*"), Debtor filed with the Court its voluntary petition for relief under Chapter 11 of the Bankruptcy Code and is continuing to manage its properties and to operate its business as debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed herein.

B.     Nature of Business.  Debtor is engaged in the business of distributing and selling high-end home furnishings and providing residential interior design services.  Debtor operates approximately 30 showrooms located in Florida, Arizona, North Carolina and Nevada, and employs more than 760 salaried and hourly employees.

C.     Pre-Petition First Lien Debt.  Debtor has acknowledged in the Motion or at the Interim Hearing that Debtor was indebted to BofA as Debtor's pre-petition lender (in such capacity, the "*Pre-Petition First Lien Lender*"), as of the Petition Date, for revolving credit loans in the approximate principal amount of $20,024,787 (the "*Pre-Petition First Lien Loans*"); for fees, expenses, and other charges associated with depository accounts and other banking products and services; and on a contingent basis in the approximate amount of $150,000 for two letters of credit (the "*Pre-Petition LCs*"; collectively with the Pre-Petition First Lien Loans, all other obligations of Debtor in respect of indemnities, guaranties and other payment assurances given by Pre-Petition First Lien Lender for the benefit of Debtor, and all interest, fees, costs, legal expenses and all other amounts heretofore or hereafter accruing thereon or at any time chargeable to Debtor in connection therewith, referred to as the "*Pre-Petition First Lien Debt*");

-2-

the Pre-Petition First Lien Debt is evidenced and governed in part by a certain Amended and Restated Loan Agreement dated as of September 19, 2000, between Pre-Petition First Lien Lender and Debtor, a copy of which may be reviewed at the offices of Debtor's counsel (hereinafter, together with all amendments thereto and modifications thereof, the "*Pre-Petition First Lien Loan Agreement*"); and the Pre-Petition First Lien Debt is due and owing to Pre-Petition First Lien Lender without any defense, offset, recoupment or counterclaim.

D. <u>BofA Pre-Petition Liens</u>. As security for the payment of all Pre-Petition First Lien Debt, Debtor granted to Pre-Petition First Lien Lender, pursuant to the Pre-Petition First Lien Loan Agreement and related documents, including, without limitation, a certain Security Agreement-Accounts, Inventory and General Intangibles, and Security Agreement-Equipment and Trademark Mortgage and Security Agreement, each dated as of September 19, 1991 (collectively, and including certain forbearance agreements related thereto, the "*Pre-Petition First Lien Loan Documents*"), security interests in and liens upon all or substantially all of Debtor's personal property, including, without limitation, all of Debtor's accounts, chattel paper, commercial tort claims, deposit accounts, documents, general intangibles, inventory, equipment, fixtures, instruments, investment property, intellectual property, letter-of-credit rights, supporting obligations, monies, and books and records (all such personal property, as the same existed on the Petition Date, together with all cash and non-cash proceeds thereof, being hereinafter referred to as the "*Pre-Petition Collateral*"). Debtor has stipulated in the Motion or at the Interim Hearing that the security interests and liens granted by Debtor to Pre-Petition First Lien Lender pursuant to the Pre-Petition First Lien Loan Documents (the "*BofA Pre-Petition Liens*") are legal, valid, enforceable, duly perfected and first priority security interests in and liens upon the Pre-Petition Collateral.

918028.3

E.    Other Creditors Asserting Liens.

1.    Collier Subordinated Debt.  On or about September 30, 2009, Debtor entered into that certain Secured Note and Option Purchase Agreement (as at any time amended, restated, supplemented or otherwise modified, the "*Collier Purchase Agreement*") dated as of September 30, 2009, with CIRS Financing LLC, a Florida limited liability company ("*Collier A*"), and CIRS Management LLC, a Florida limited liability company ("*Collier B*" and, collectively with Collier A, "*Collier*"), pursuant to which Debtor has borrowed $13,500,000 from Collier, as evidenced by certain promissory notes in the initial aggregate principal amount of $13,500,000 executed by Debtor in favor of Collier (as at any time amended, modified, restated or replaced, each a "*Collier Note,*" and collectively, the "*Collier Notes*").  As security for payment of the obligations and indebtedness of Debtor to Collier owing in respect of the Collier Notes (such obligations and indebtedness being referred to herein collectively as the "*Collier Debt*"), Debtor granted to Collier, pursuant to a certain Security Agreement dated as of September 30, 2009 (the "*Collier Security Agreement*"), security interests in and liens upon certain Pre-Petition Collateral (the "*Collier Liens*").  The Collier Debt and the Collier Liens are subordinate to the Pre-Petition First Lien Debt and the BofA Pre-Petition Liens pursuant to a certain Intercreditor Agreement (as at any time amended, restated, supplemented or otherwise modified, the "*Collier Intercreditor Agreement*") dated October 1, 2009, between BofA and Collier, and the Collier Intercreditor Agreement was acknowledged in writing by Debtor.

2.    Investor Subordinated Debt.  On or about September 30, 2009, Debtor entered into that certain Secured Note and Option Purchase Agreement (as at any time amended, restated, supplemented or otherwise modified, the "*Investor Purchase Agreement*") dated as of September 30, 2009, with Clive Lubner, the Bob and Linda Taylor Foundation, Inc., Fred

Berkelbaugh, Entrust Freedom, LLC f/b/o Allen G. Ten Broek, Robert F. Anderson Irrevocable Trust u/a/d, Curtis Bostick, Daniel Lubner, Brian F. Crowley, J. Robert Gould and Lawrence Cunningham (collectively, the "*Investors*"), pursuant to which Debtor has borrowed $2,500,000 from the Investors, as evidenced by a certain Secured Note dated September 30, 2009, in the aggregate initial principal amount of $2,500,000 (as at any time amended, modified, restated or replaced, the "*Investor Note* "), executed by Debtor in favor of the Investors. As security for the payment of the obligations and indebtedness of Debtor to the Investors owing in respect of the Investor Note (such obligations and indebtedness being referred to herein collectively as the "*Investor Debt*"), Debtor granted to the Investors, pursuant to a Security Agreement dated as of September 30, 2009 (the "*Investor Security Agreement*"), security interests in and liens upon certain Pre-Petition Collateral (the "*Investor Liens*"). The Investor Debt and the Investor Liens are subordinate to the Pre-Petition First Lien Debt, the BofA Pre-Petition Liens, the Collier Debt and the Collier Liens pursuant to a certain Subordination Agreement dated October 1, 2009 (as at any time amended, restated, supplemented or otherwise modified, the "*Investor Subordination Agreement*"), among BofA, the Investors and Collier, and the Investor Subordination Agreement was acknowledged in writing by Debtor.

3. <u>Alleged Judgment Lien</u>. JBC Investments, Inc. ("*JBC*") may assert a judgment lien against certain assets of Debtor pursuant to an alleged judgment entered on or about January 13, 2011, against Debtor by a Florida state court. On or about February 10, 2011, JBC filed a garnishment action against BofA, as garnishee, styled *JBC Investments, Inc. v. R & S Home of Fine Decorators, LLC and Robb & Stucky Limited LLLP, Bank of America Corporation, Garnishee*, Case No. 08-51681 (02), In the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida (the "*Garnishment Action*"). In response to the

918028.3

Garnishment Action, BofA has set aside $157,400 (the "*Garnishment Reserve Funds*") in proceeds of Pre-Petition Collateral. Neither Debtor nor BofA concedes that JBC has any valid, effective or unavoidable judgment lien or other interest in the Garnishment Reserve Funds, BofA affirmatively asserts that its security interest in the Garnishment Reserve Funds is senior in priority to the interest of JBC (if any) therein, and each of Debtor and BofA reserves all of its rights, remedies, claims and defenses with respect to any claim or lien that has been or may be asserted by JBC.

4. <u>Parties Who May Assert Interests in Specific Inventory</u>. Debtor believes, but does not stipulate or concede, that the following creditors may assert interests in specific inventory of Debtor: Heirloom Rug Gallery, Ltd. (Florida UCC Financing Statement No. 200704921713 filed on February 27, 2007); Artistica, a California corporation (Florida UCC Financing Statement No. 200704921713 filed on July 17, 2009); O.W. Lee Company Inc. (Florida UCC Financing Statement No. 201003608777 filed on November 22, 2010); and Hilco Merchant Resources, LLC (Florida UCC Financing Statement No. 201003705292 filed on December 9, 2010) (collectively, the "*Specific Inventory Creditors*"; and the specific inventory described in such UCC financing statements (if any is in the possession of Debtor as of the Petition Date) is hereinafter referred to as the "*Specified Inventory*"). Debtor represents that, to the best of its knowledge, there are no other security interests or liens asserted against any of the Pre-Petition Collateral other than by Pre-Petition First Lien Lender, Collier, the Investors, certain creditors who may assert interests in specific equipment of Debtor, the Specific Inventory Creditors and JBC.

F. <u>Need for Financing</u>. An immediate and ongoing need exists for Debtor to obtain financing to continue the operation of its business as debtor-in-possession under Chapter 11 of

918028.3

the Bankruptcy Code and to minimize disruption of Debtor's business. Despite diligent efforts, Debtor has been unable to obtain financing in the form of unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense or solely in exchange for the grant of a special administrative expense priority pursuant to Section 364(c)(1) of the Bankruptcy Code; and other than the financing from DIP Lender pursuant to the DIP Loan Agreement (as hereinafter defined), Debtor is unable to obtain financing in the form of credit secured by liens solely on unencumbered assets of Debtor or solely by liens that are junior to existing liens on property of the estate pursuant to Sections 364(c)(2) and (c)(3) of the Bankruptcy Code.

       G.     <u>Proposed DIP Facility</u>. Debtor has requested DIP Lender to establish a secured revolving credit facility in favor of Debtor (the "*DIP Facility*") pursuant to which Debtor may obtain loans from time to time ("*DIP Loans*"), in an aggregate amount up to $25,000,000 outstanding at any time, secured by all personal property of Debtor (but excluding Avoidance Claims and Avoidance Proceeds, as defined below), wherever located and whether created, acquired or arising prior to, on or after the Petition Date. DIP Lender is willing to establish the DIP Facility, upon the terms and conditions set forth herein and in a certain Post-Petition Loan and Security Agreement to be entered into by Debtor and DIP Lender, substantially in the form attached to the Motion (together with all schedules, exhibits and annexes thereto, and as at any time amended, modified or restated, the "*DIP Loan Agreement*").[2]

       H.     <u>Certain Conditions to DIP Facility</u>. DIP Lender's willingness to make DIP Loans and make other extensions of credit pursuant to the DIP Loan Agreement (collectively, the "*Credit Extensions*") is conditioned upon, among other things, (i) Debtor obtaining Court

---

[2] Capitalized terms used but not defined herein shall have the meanings given to them in the DIP Loan Agreement.

918028.3

approval of the DIP Loan Agreement and all obligations of Debtor and all rights and remedies of DIP Lender thereunder, (ii) Debtor's provision of adequate protection for Pre-Petition First Lien Lender's interests in the Pre-Petition Collateral pursuant to Sections 361 and 363 of the Bankruptcy Code, and (iii) DIP Lender receiving, as security for the prompt payment of all DIP Obligations (as hereinafter defined), a security interest in and lien upon all of Debtor's pre-petition and post-petition personal property, including, without limitation, all of Debtor's cash, accounts, inventory, equipment, general intangibles, documents, instruments, chattel paper, deposit accounts, letter-of-credit rights, commercial tort claims, investment property, intellectual property, leasehold interests, contract rights, books and records relating to any assets of Debtor and all proceeds (including, without limitation, insurance proceeds) of the foregoing, whether such assets are now in existence or hereafter created, acquired or arising and wherever located (all such personal property, including, without limitation, all Pre-Petition Collateral and the proceeds thereof, being collectively hereinafter referred to as the "*Collateral*"), and that such security interests and liens have the priority hereinafter set forth; provided, however, that the term "Collateral" shall not include Avoidance Claims or Avoidance Proceeds (as those terms are defined below) except as expressly provided in paragraph 3 below, and shall not include Debtor's leasehold interest in its Orlando Millenia Store.

I.     Interim Hearing; Budget. Pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2), Debtor has requested in the Motion that the Court hold the Interim Hearing to consider authorizing Debtor to obtain, during the period (the "*Interim Period*") from the date of entry of this Order through the date on which the final hearing on the Motion pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2) scheduled pursuant to paragraph 22 of this Order (the "*Final Hearing*") is concluded, DIP Loans for purposes specified in Debtor's cash budget annexed to the

Motion (as at any time amended or extended with the prior written consent of DIP Lender, the "*Budget*").

J.     <u>Service of Motion</u>. Debtor's noticing and claims agent has certified that copies of the Motion (together with copies of the proposed DIP Loan Agreement and Budget annexed thereto) and notice of the Interim Hearing have been served by electronic mail, telecopy transmission, hand delivery, overnight courier or first class United States mail upon the Office of the United States Trustee (the "*U.S Trustee*"), counsel for Pre-Petition First Lien Lender, Collier and its counsel, the Investors, JBC, the Specific Inventory Creditors, the 20 largest unsecured creditors of Debtor, and the Internal Revenue Service. The Court finds that the foregoing notice of the Motion, as it relates to this Order, is sufficient for all purposes under the Bankruptcy Code and the Bankruptcy Rules, including, without limitation, Sections 102(1) and 364 of the Bankruptcy Code and Bankruptcy Rule 4001(b) and (c).

K.     <u>Finding Cause</u>. Good cause has been shown for the entry of this Order and authorization for Debtor to obtain Credit Extensions pursuant to the DIP Loan Agreement as hereinafter provided during the Interim Period. Debtor's need for financing of the type afforded by the DIP Loan Agreement is immediate and critical. Entry of this Order will minimize disruption of Debtor's business and operation, will preserve the assets of Debtor's estate and their value and is in the best interests of Debtor, its creditors and its estate. The terms of the proposed financing are fair and reasonable, reflect Debtor's exercise of business judgment and are supported by reasonably equivalent value and fair consideration.

L.     <u>Finding of Good Faith</u>. Based upon the record presented at the Interim Hearing, it appears that the DIP Loan Agreement and related documents, as well as the terms of this Interim Order, have been negotiated in good faith and at arm's length between Debtor, on the one hand,

918028.3

and Pre-Petition First Lien Lender and DIP Lender (collectively, in their respective capacities, the "*Lenders*"), on the other. Therefore, all Credit Extensions to Debtor pursuant to the DIP Loan Agreement shall be deemed to have been made in good faith within the meaning of Section 364(e) of the Bankruptcy Code.

M.  Authorization for Priming Liens. Pursuant and subject to the express terms of the Collier Intercreditor Agreement and the Investor Subordination Agreement, each of Collier and the Investors has consented to the DIP Liens (defined below) in favor of DIP Lender priming, pursuant to Section 364(d) of the Bankruptcy Code, all liens and security interests in favor of any of them.

N.  Jurisdiction; Core Proceeding. This Court has jurisdiction to enter this Order pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding, as defined in 28 U.S.C. § 157(b)(2).

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, as follows:

1.  Grant of Motion; Authorization of Interim Financing. The Motion is hereby GRANTED and the Court hereby authorizes and approves (i) Debtor's execution and delivery of the DIP Loan Agreement in substantially the form annexed to the Motion (with such changes, if any, as were made prior to or as a result of the Interim Hearing or are otherwise authorized to be made as amendments to the DIP Loan Agreement in accordance with this Order) and all instruments, security agreements, assignments, pledges, mortgages, reaffirmations and other documents referred to therein or requested by DIP Lender to give effect to the terms thereof (the DIP Loan Agreement and such other instruments, security agreements, assignments and other documents, as at any time amended, being collectively called the "*DIP Financing Documents*");

918028.3

(ii) Debtor's obtaining DIP Loans and other Credit Extensions in accordance with the DIP Loan Agreement from time to time up to an aggregate principal amount outstanding at any time of $25,000,000 plus interest, fees and other charges payable in connection therewith, and to incur any and all liabilities and obligations thereunder and to pay all principal, interest, fees, expenses and other obligations provided for under the DIP Financing Documents; and (iii) Debtor's satisfying all conditions precedent and performing all obligations hereunder and thereunder in accordance with the terms hereof and thereof; provided, however, that, during the Interim Period and subject to all of the terms and conditions in the DIP Loan Agreement, Debtor may obtain Credit Extensions only to the extent necessary to avoid immediate and irreparable harm to Debtor, which, for purposes hereof, shall mean proceeds of DIP Loans used (a) to pay any of the Credit Extensions or other DIP Obligations (as defined below), (b) for purposes specified (and in amounts not to exceed those shown) in the Budget, (c) to make adequate protection and other payments to Pre-Petition First Lien Lender to the extent authorized or required herein, and (d) to pay other expenses that are required or authorized to be paid, prior to the Final Hearing, under the DIP Loan Agreement. DIP Lender shall not have any obligation or responsibility to monitor Debtor's use of the DIP Loans and may rely upon Debtor's representations that the amount of Credit Extensions requested at any time, and the use thereof, are in accordance with the requirements of this Order, the DIP Financing Documents and Bankruptcy Rule 4001(c)(2). As provided in the DIP Loan Agreement, the Pre-Petition LCs shall be treated as having been issued under the DIP Loan Agreement, shall constitute part of the Credit Extensions thereunder, shall be entitled to all of the benefits and security of the DIP Financing Documents and this Order, and from and after entry of this Order shall cease to be regarded as part of the Pre-Petition First Lien Debt. Any and all objections to the relief requested in the Motion, to the extent not

otherwise withdrawn, waived or resolved by consent at or before the Interim Hearing, are hereby OVERRULED and DENIED.

2. <u>Execution, Delivery and Performance of DIP Financing Documents</u>. The DIP Financing Documents may be executed and delivered on behalf of Debtor by Brian Crowley, Kevin Regan or any officer, director, or agent of Debtor, who by signing shall be deemed to represent himself or herself to be duly authorized and empowered to execute the DIP Financing Documents for and on behalf of Debtor; Lender shall be authorized to rely upon any such person's execution and delivery any of the DIP Financing Documents as having done so with all requisite power and authority to do so; and the execution and delivery of any of the DIP Financing Documents or amendments thereto by any such person on behalf of Debtor shall be conclusively presumed to have been duly authorized by all necessary partnership action of Debtor. Upon execution and delivery thereof, the DIP Financing Documents shall constitute valid and binding obligations of Debtor, enforceable against Debtor in accordance with their terms. In furtherance of the provisions of paragraph 1 of this Order, Debtor is authorized and directed to do and perform all acts; to make, execute and deliver all instruments and documents (including, without limitation, the execution of security agreements, pledge agreements, financing statements and intellectual property filings); and to pay all filing and recording fees as may be necessary or, in the opinion of DIP Lender, desirable to give effect to any of the terms and conditions of the DIP Financing Documents, to validate the perfection of the DIP Liens (as defined below) or as otherwise required or contemplated by the DIP Financing Documents.

3. <u>DIP Liens</u>. As security for Debtor's payment and performance of all Credit Extensions, all interest, costs, expenses, fees and other charges at any time or times payable by Debtor to DIP Lender in connection with any Credit Extensions or otherwise pursuant to any of

the DIP Financing Documents, all reimbursement obligations in respect of the Pre-Petition LCs, and all other Obligations under the DIP Loan Agreement (including, without limitation, liabilities of Debtor at any time or times associated with DIP Lender's provision of Bank Products) (collectively, the "*DIP Obligations*"), DIP Lender shall have, and is hereby granted, security interests in and liens upon all of the Collateral (collectively, the "*DIP Liens*"), as follows:

(a)     Unencumbered Collateral.     Pursuant to Section 364(c)(2) of the Bankruptcy Code, perfected first priority senior security interests in and liens upon (i) all Collateral that, as of the Petition Date, is not subject to valid, perfected and non-avoidable liens or to valid and unavoidable liens in existence on the Petition Date that are perfected thereafter (with a priority that relates back to a date prior to the Petition Date), as permitted by Section 546(b) of the Bankruptcy Code, and (ii) all Collateral (other than direct proceeds of Pre-Petition Collateral that are subject to valid, perfected and non-avoidable pre-petition liens) that is created or acquired, or arises, after the Petition Date; and

(b)     Encumbered Collateral. Pursuant to Section 364(c)(3) of the Bankruptcy Code, perfected junior security interests in and liens upon all Collateral that is subject to valid, perfected and non-avoidable liens in existence on the Petition Date (including the BofA Pre-Petition Liens but excluding the Collier Liens, the Investor Liens, the Collier Replacement Liens (defined below) and the Investor Replacement Liens (defined below) (collectively, the "*Contractually Subordinated Liens*")) or to valid and non-avoidable liens in existence on the Petition Date that are perfected thereafter (with a priority that

-13-

relates back to a date prior to the Petition Date), as permitted by Section 546(b) of the Bankruptcy Code, except for the Contractually Subordinated Liens; and

(c)    Extent of Priming DIP Liens. Notwithstanding anything to the contrary contained in this paragraph 3, pursuant to Section 364(d) of the Bankruptcy Code, the DIP Liens shall be senior in priority to all of the Contractually Subordinated Liens.

Notwithstanding the foregoing provisions of this paragraph 3 or anything to the contrary in the DIP Financing Documents, the DIP Liens shall not attach to any of the following property (unless Debtor shall grant or consent to any lien or security interest therein in favor of any other person or entity, in which event all such property shall be subject to the DIP Liens and such DIP Liens shall be first priority liens with respect to such property): (i) any claims pursuant to Sections 502(d), 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code (the "*Avoidance Claims*") or (ii) any proceeds or property recovered in connection with the successful prosecution or settlement of any Avoidance Claim (the "*Avoidance Proceeds*"). In no event shall any of the DIP Liens be subject to any pre-petition or post-petition lien or security interest that is avoided and preserved for the benefit of Debtor's estate under Section 551 of the Bankruptcy Code; and in no event shall any person or entity who pays (or, through the extension of credit to Debtor, causes to be paid) any of the DIP Obligations be subrogated, in whole or in part, to any rights, remedies, claims, privileges, liens or security interests granted to or in favor of, or conferred upon, DIP Lender by the terms of the DIP Financing Documents or this Order, until such time as all of the Pre-Petition First Lien Debt and all of the DIP Obligations are Paid in Full and the DIP Facility is terminated.

918028.3

4.     Superpriority Claim; Surcharge.

(a)     Scope of Superpriority Claim.     All DIP Obligations shall have administrative priority in accordance with, and shall constitute an allowed superpriority claim (the "*Superpriority Claim*") pursuant to, Section 364(c)(1) of the Bankruptcy Code over all other administrative expenses in Debtor's case of the kind specified in, or ordered pursuant to, Sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(e), 507(a), 507(b), 546(c), 726 or 1114 of the Bankruptcy Code; provided, however, that the Superpriority Claim shall not attach to or be payable from Avoidance Claims or Avoidance Proceeds.

(b)     No Surcharge.     No costs or administrative expenses that have been or may be incurred in this Chapter 11 case, in any matters or proceedings related hereto or in any superseding Chapter 7 case and no priority claims are or will be prior to or on a parity with the Superpriority Claim of DIP Lender for the DIP Obligations.  Subject to entry of a final order on the Motion, in no event shall any costs or expenses of administration be imposed upon any Lender or any of the Collateral pursuant to Section 506(c) of the Bankruptcy Code or otherwise without the prior written consent of such Lender, and no such consent shall be implied from any action, inaction or acquiescence by any Lender.

5.     Repayment.  The DIP Obligations shall be due and payable, and shall be paid, as and when provided in the DIP Financing Documents and as provided herein, without offset or counterclaim.  Without limiting the generality of the foregoing, in no event shall Debtor be authorized to offset or recoup any amounts owed, or allegedly owed, by Pre-Petition First Lien Lender or DIP Lender to Debtor or any of its subsidiaries or affiliates against any of the DIP Obligations without the prior written consent of DIP Lender and no such consent shall be implied from any action, inaction or acquiescence by DIP Lender.

918028.3

6.   Cash Collateral.

(a)   Dominion Account. Debtor shall cause all proceeds of Collateral ("*Cash Collateral*") to be promptly deposited in an account designated by DIP Lender (the "*Dominion Account*"). Prior to the deposit of Cash Collateral to the Dominion Account, Debtor shall be deemed to hold such proceeds in trust for the benefit of Lenders.

(b)   Application of Cash Collateral. Lenders shall be entitled to apply all Cash Collateral (excluding the Garnishment Reserve Funds) to the Pre-Petition First Lien Debt or the DIP Obligations consistent with the terms of paragraph 7 of this Order and the DIP Loan Agreement.

(c)   Use of Cash Collateral. Unless and until all of the Pre-Petition First Lien Debt and DIP Obligations have been Paid in Full and the DIP Facility (and all commitments of the DIP Lender thereunder) has terminated, Debtor shall not be authorized to use any Cash Collateral for any purpose except as otherwise authorized by paragraph 7 of this Order or the DIP Loan Agreement or as otherwise authorized by Pre-Petition First Lien Lender in writing in its sole and absolute discretion. After the Pre-Petition First Lien Debt and the DIP Obligations have been Paid in Full and the DIP Facility (and all commitments of DIP Lender thereunder) has terminated, Debtor may petition the Court for authority to use Cash Collateral.

7.   Adequate Protection. As adequate protection pursuant to Sections 361 and 363 of the Bankruptcy Code for Debtor's sale, collection or other disposition of any of the Pre-Petition Collateral, the following measures of adequate protection are granted:

(a)   BofA Replacement Liens. Pre-Petition First Lien Lender is hereby granted replacement liens, effective as of the Petition Date, in and to all of the Collateral (the "*BofA Replacement Liens*") as partial adequate protection to Pre-Petition First Lien Lender to the

extent of any decrease in value of the BofA Pre-Petition Liens caused by Debtor's use, consumption, sale, collection or other disposition of any Pre-Petition Collateral. The BofA Replacement Liens shall be senior in priority to the DIP Liens and all Contractually Subordinated Liens (as defined in paragraph 3(b) above).

(b)     Collier Replacement Liens.  Collier is hereby granted replacement liens, effective as of the Petition Date, in and to all of the Collateral that is of the same type and nature as the Pre-Petition Collateral (the "*Collier Replacement Liens*") as partial adequate protection to Collier to the extent of any decrease in value of the Collier Liens caused by Debtor's use, consumption, sale, collection or other disposition of any Pre-Petition Collateral. The Collier Replacement Liens shall (i) be junior in priority to the BofA Pre-Petition Liens, the DIP Liens, and the BofA Replacement Liens and (ii) be senior in priority to the Investor Replacement Liens (defined below).

(c)     Investor Replacement Liens.   The Investors are hereby granted replacement liens, effective as of the Petition Date, in and to all of the Collateral that is of the same type and nature as the Pre-Petition Collateral (the "*Investor Replacement Liens*") as partial adequate protection to the Investors to the extent of any decrease in value of the Investor Liens caused by Debtor's use, consumption, sale, collection or other disposition of any Pre-Petition Collateral. The Investor Replacement Liens shall be junior in priority to the BofA Pre-Petition Liens, the DIP Liens, the BofA Replacement Liens, the Collier Liens and the Collier Replacement Liens.

(d)     Adequate Protection in Favor of JBC and Specific Inventory Creditors. The Garnishment Reserve Funds shall continue to be held by BofA pending further order of the Court, subject to all valid liens and security interests that may have existed with respect to the

918028.3

Garnishment Reserve Funds on the Petition Date, with all of such liens and security interests to have the same validity, extent, and priority as existed with respect to the Garnishment Reserve Funds as of the Petition Date. Debtor shall segregate and shall not sell or otherwise dispose of any of the Specified Inventory (described in the UCC Financing Statements listed in paragraph E(4) above), absent further order of the Court, and no Lender shall be liable to Debtor or any Specific Inventory Creditor if Debtor inadvertently sells any Specified Inventory and remits the proceeds thereof to such Lender.

(e)    Application of Proceeds of Pre-Petition Accounts. All collections and proceeds of Debtor's accounts receivable and other rights to payment existing or arising on or prior to the Petition Date (the "*Pre-Petition Accounts*") (excluding the Garnishment Reserve Funds) and all payments by account obligors indebted to Debtor with respect to transactions entered into or concluded prior to the Petition Date, may in the discretion of Lender be applied to pay (or in the case of contingent obligations, cash collateralize) the Pre-Petition First Lien Debt, in such order of application as Pre-Petition First Lien Lender shall elect, in its discretion, until the Pre-Petition First Lien Debt is Paid in Full, and then applied to the DIP Obligations in such order of application as DIP Lender may elect in its discretion until Full Payment thereof. Debtor shall use its reasonable, good faith efforts to provide promptly to Lenders statements identifying the portion of each deposit to the Dominion Account that represents proceeds of Pre-Petition Accounts so as to assist Lenders in the application of the proceeds of Pre-Petition Accounts in accordance herewith. Lenders shall be entitled to assume that all deposits to the Dominion Account and all collections of accounts receivable received by Debtor or any Lender after the Petition Date constitute proceeds of Pre-Petition Accounts, until such time as the Lenders have

918028.3

received and applied to their respective claims an amount equal to the aggregate balance of the Pre-Petition Accounts on the books and records of Debtor as of the Petition Date.

(f)     Sale of Pre-Petition Inventory. In consideration of Debtor's sale or other disposition of any raw materials, work-in-process, finished goods, packaging materials or labels that were in existence on the Petition Date (collectively, "*Pre-Petition Inventory*"), Debtor shall (unless otherwise directed by Pre-Petition First Lien Lender in writing) pay to Pre-Petition First Lien Lender, concurrently with any sale or other disposition thereof, the value of such Pre-Petition Inventory (which shall be deemed to be no less than 60% of cost) and Pre-Petition First Lien Lender shall be authorized to apply all such payments to the Pre-Petition First Lien Debt (in such order of application as Pre-Petition First Lien Lender may elect in its discretion consistent with the Pre-Petition First Lien Loan Agreement) until the Pre-Petition First Lien Debt is Paid in Full and thereafter to the DIP Obligations (in such order of application as DIP Lender may elect in its discretion) until the DIP Obligations are Paid in Full and the DIP Facility is terminated. Based Debtor's books and records, the total value at cost of all Pre-Petition Inventory as of the Petition Date was approximately $46 million (the "*Pre-Petition Inventory Amount*") and, therefore, the aggregate of all payments made to Pre-Petition First Lien Lender pursuant to the provisions of this subparagraph shall not exceed such amount. For purposes of implementing this measure of adequate protection, it shall be assumed that Debtor's sale or disposition of any inventory after the Petition Date, including, without limitation, raw materials, work-in-process, finished goods, packaging materials or labels, constitutes a use of Pre-Petition Inventory until the aggregate amount of the payments received by Pre-Petition First Lien Lender under this subparagraph equals the Pre-Petition Inventory Amount. DIP Lender is authorized to make DIP Loans in amounts sufficient to satisfy Debtor's payment obligations under this subparagraph and

918028.3

to disburse such DIP Loans directly to Pre-Petition First Lien Lender for application to the Pre-Petition First Lien Debt and thereafter to the DIP Obligations as hereinabove provided. All such DIP Loans shall be entitled to all of the benefits and security of the DIP Financing Documents and this Order.

(g) <u>Use of Other Pre-Petition Collateral</u>. In consideration of Debtor's use, consumption, sale or other disposition of Pre-Petition Collateral other than Pre-Petition Inventory or Pre-Petition Accounts, including, without limitation, equipment, vehicles, general intangibles, chattel paper, documents, instruments, investment property, intellectual property, and deposit accounts ("*Other Pre-Petition Collateral*"), Pre-Petition First Lien Lender may apply the proceeds of Other Pre-Petition Collateral to the Pre-Petition First Lien Debt, in such order of application as Pre-Petition First Lien Lender shall elect, until the Pre-Petition First Lien Debt is Paid in Full, and thereafter to the DIP Obligations in such order as DIP Lender may elect in its discretion. Nothing herein shall be construed to be a consent by Pre-Petition First Lien Lender or DIP Lender to any sale or other disposition of any Collateral.

(h) <u>Reservation of Rights</u>. Nothing herein shall be deemed to be a waiver by Pre-Petition First Lien Lender of its right to request additional or further protection of its interests in any Pre-Petition Collateral, to move for relief from the automatic stay, to seek the appointment of a trustee or examiner or the conversion or dismissal of this Chapter 11 case, or to request any other relief in this case; nor shall anything herein or in any of the DIP Financing Documents constitute an admission by Lenders regarding the quantity, quality or value of any Collateral securing the Pre-Petition First Lien Debt or DIP Obligations or constitute a finding of adequate protection with respect to the interests of Lenders in any Collateral. Pre-Petition First Lien Lender shall be deemed to have reserved all rights to assert (subject to any defenses of

918028.3

Debtor or any other party in interest) entitlement to the protections and benefits of Section 507(b) of the Bankruptcy Code in connection with any use, sale or other disposition of any of the Collateral, to the extent that the protection afforded by this Order to Pre-Petition First Lien Lender's interests in any Collateral proves to be inadequate.

8.    Fees and Expenses of Professionals.

(a)    For so long as no "Event of Default" under (and as defined in) the DIP Loan Agreement shall have occurred and be continuing, Debtor is authorized to use proceeds of DIP Loans (but not proceeds of any of the Collateral without the prior written consent of Lenders) to pay such compensation and expense reimbursement (collectively, *"Professional Expenses"*) of professionals (including attorneys, financial advisors, accountants, appraisers, consultants and investment bankers) retained by Debtor (the *"Debtor Professionals"*) or the Official Committee of Unsecured Creditors (the *"Committee Professionals"*; the Debtor Professionals and Committee Professionals are referred to collectively as the *"Professionals"*), to the extent that such compensation and expense reimbursement is approved by the Court (including through any interim compensation procedures approved by the Court); provided, however, that no proceeds of DIP Loans or any Collateral shall be used to pay Professional Expenses of any Professional or any other costs incurred in connection with (1) commencing or continuing any claims, causes of actions or contested matters against Pre-Petition First Lien Lender or DIP Lender, including, without limitation, discovery proceedings subsequent to the commencement of any such claims or causes of action; (2) preventing, hindering or delaying performance or enforcement by Lenders of their respective rights or remedies under this Order, any of the DIP Financing Documents, any of the Pre-Petition First Lien Loan Documents, or any other agreement with Debtor; (3) challenging any BofA Pre-Petition Lien, BofA Replacement Lien, DIP Lien or

-21-

Superpriority Claim; or (4) any other purpose prohibited by the DIP Financing Documents (collectively, the "*Prohibited Uses*"). Notwithstanding the foregoing, DIP Loans may be used to pay up to $10,000 of Professional Expenses of Committee Professionals incurred in connection with review by the Official Committee of Unsecured Creditors (the "*Committee*") of the validity, perfection, priority or amount of the Pre-Petition First Lien Debt, the BofA Pre-Petition Liens and the Pre-Petition First Lien Loan Documents. Debtor Professionals and Committee Professionals, if any, shall be permitted to submit to Debtor, with copies to counsel for the DIP Lender, periodic statements (but no more frequently than on a monthly basis) for services rendered and reimbursable expenses incurred by them (the "*Conditional Professional Expenses*").

(b)     Subject to availability for borrowing and provided no Default or Event of Default exists, DIP Lender shall, at Debtor's request, advance commencing on Monday, February 28, 2011, and continuing each Monday thereafter until the Commitment Termination Date, the amounts set forth in the Budget for Professional Expenses (which excludes retainers held as of the Petition Date) not to exceed, in the aggregate, the Unwind Expense Commitment; said funds shall be advanced by wire transfer to and segregated and escrowed in an escrow account maintained by counsel for Debtor for payment to Committee Professionals and Debtor Professionals, in accordance with procedures which may be approved by the Court for the payment of professionals (the "*Professional Expense Escrow*"). Funds deposited in the Professional Expense Escrow shall be available and may be used solely for the payment of the Conditional Professional Expenses and Professional Expenses (to the extent not previously paid). DIP Lender shall have a first priority lien on all funds in the Professional Expense Escrow and

918028.3

any amounts not payable to any Professionals shall be returned to DIP Lender for application on account of the DIP Obligations.

(c)     Nothing in this paragraph shall prejudice or impair the rights of either Debtor Professionals or Committee Professionals to request an award of compensation in excess of the amounts set forth in the Budget (the "*Unbudgeted Professional Expenses*") or the rights of the DIP Lender to object to the amount or reasonableness of any Professional Expenses or Unbudgeted Professional Expenses.  In no event, however, shall DIP Lender be responsible for the payment of Unbudgeted Professional Expenses or any amounts in excess of the Unwind Expense Commitment.  Nothing herein shall be deemed as a consent to the allowance of the fees or expenses of any professionals retained by Debtor or the Committee or a waiver of the rights of Pre-Petition First Lien Lender, DIP Lender, Collier or the Investors to object to any requests for allowance of any fees or expenses.

9.     <u>Unwind Expense Commitment of DIP Lender</u>.  If so requested in writing by Debtor within thirty (30) days after the Commitment Termination Date, DIP Lender shall be obligated (the "*Unwind Expense Commitment*") to make one or more DIP Loans to Debtor in an aggregate amount equal to the lesser of (A) the Unwind Reserve <u>minus</u> any amounts previously funded in the Professional Expense Escrow, or (B) an amount sufficient to pay the following (and such DIP Loans shall be used solely for the payment of the following) (collectively the "*Unwind Expenses*"): (i) unpaid Professional Expenses (whether or not accrued prior to the Commitment Termination Date) that are approved at any time for payment by final order of the Court, not to exceed in aggregate the Borrower Professional Expense Reserve (as defined in the DIP Loan Agreement on the date hereof) for payments to Debtor Professionals and the Committee Professional Expense Reserve (as defined in the DIP Loan Agreement on the date

918028.3

hereof) for payments to Committee Professionals; (ii) any fees required to be paid to the Clerk of the Court (whether or not accrued prior to the Commitment Termination Date); and (iii) unpaid quarterly fees that are required to be paid to the U.S. Trustee pursuant to 28 U.S.C. §1930(a)(6) and that accrued prior to the Commitment Termination Date. All such DIP Loans shall constitute DIP Obligations that shall be due and payable on demand by DIP Lender and shall be entitled to all of the benefits and security of this Order and the DIP Financing Documents. DIP Lender may, at any time on or after the Commitment Termination Date and in its sole discretion (whether or not it has received any request therefor from Debtor), advance to Debtor an amount estimated by it as being sufficient to pay all or any part of the Unwind Expenses (with written confirmation to Debtor of the purpose of such advance), in which event Debtor shall hold the amount so advanced in escrow for payment of the specified Unwind Expenses (with any surplus remaining to be remitted back to DIP Lender to the extent of any unpaid DIP Obligations). After funding the Unwind Expenses (whether such funding is made at Debtor's request or in DIP Lender's discretion), DIP Lender shall be deemed to have discharged the Unwind Expense Commitment in an amount equal to such funding and thereafter shall have no further obligation in respect of the Unwind Expense Commitment to the extent of such funding.

10.   <u>Preservation of Rights Granted Under This Order</u>.

(a)   <u>Protection From Subsequent Financing Order</u>. There shall not be entered in this Chapter 11 case or in any successor case any order that authorizes the obtaining of credit or the incurrence of indebtedness by Debtor (or any trustee or examiner) that is (i) secured by a security interest, mortgage or collateral interest or lien on all or any part of the Collateral that is equal or senior to the DIP Liens, BofA Pre-Petition Liens or BofA Replacement Liens or (ii) entitled to priority administrative status that is equal or senior to the Superpriority Claim granted

918028.3

to DIP Lender herein; provided, however, that nothing herein shall prevent the entry of an order that specifically provides that, as a condition to the granting of the benefits of clauses (i) or (ii) above, all of the DIP Obligations and Pre-Petition First Lien Debt must be indefeasibly Paid in Full, in cash, from the proceeds of such credit or indebtedness.

(b)  Rights Upon Dismissal, Conversion or Consolidation.  If this Chapter 11 case is dismissed, converted or substantively consolidated with another case, then neither the entry of this Order nor the dismissal, conversion or substantive consolidation of this Chapter 11 case shall affect the rights or remedies of DIP Lender under the DIP Financing Documents or the rights or remedies of Lenders under this Order, and all of the respective rights and remedies hereunder and thereunder of Lenders shall remain in full force and effect as if this Chapter 11 case had not been dismissed, converted, or substantively consolidated. It shall constitute an Event of Default if Debtor seeks, or if there is entered, any order dismissing this Chapter 11 case. If an order dismissing this Chapter 11 case is at any time entered, such order shall provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that (i) the DIP Liens, BofA Replacement Liens and Superpriority Claim granted to and conferred upon Lenders shall continue in full force and effect and shall maintain their priorities as provided in this Order (and that such liens and Superpriority Claim shall, notwithstanding such dismissal, remain binding on all interested parties) and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the DIP Liens, BofA Replacement Liens and Superpriority Claim.

(c)  Survival of Order. The provisions of this Order, and any actions taken pursuant hereto, shall survive the entry of and shall govern with respect to any conflict with any order that may be entered confirming any plan of reorganization or liquidation or converting this Chapter 11 case from Chapter 11 to Chapter 7.

918028.3

(d)     No Discharge; Credit Bid Rights. The DIP Obligations shall not be discharged by the entry of any order confirming a plan of reorganization or liquidation in this Chapter 11 case and, pursuant to Section 1141(d)(4) of the Bankruptcy Code, Debtor has waived such discharge.  No plan of reorganization or liquidation, nor any order entered in connection with a sale of assets under Section 363 of the Bankruptcy Code, shall limit or otherwise restrict the right of Pre-Petition First Lien Lender or DIP Lender to submit a credit bid for all or any part of the Collateral.

(e)     No Marshaling. In no event shall DIP Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to any Collateral securing any of the DIP Obligations; and in no event shall any DIP Liens be subject to any pre-petition or post-petition lien or security interest that is avoided and preserved for the benefit of Debtor's estate pursuant to Section 551 of the Bankruptcy Code.

(f)     No Requirement to File Proof of Claim. Notwithstanding anything to the contrary contained in any prior or subsequent order of the Court, including, without limitation, any bar order establishing a deadline for the filing of proofs of claims entitled to administrative expense treatment under Section 503(b) of the Bankruptcy Code, DIP Lender shall not be required to file any proof of claim with respect to any of the DIP Obligations, all of which shall be due and payable in accordance with the DIP Loan Agreement and the other DIP Financing Documents without the necessity of filing any such proof of claim; and the failure to file any such proof of claim shall not affect the validity or enforceability of any of the DIP Financing Documents or prejudice or otherwise adversely affect DIP Lender's rights, remedies, powers or privileges under the DIP Financing Documents or this Order.

918028.3

11.     Automatic Perfection of Liens. The DIP Liens, BofA Replacement Liens and Collier Replacement Liens shall be deemed valid, binding, enforceable and perfected upon entry of this Order. Neither any Lender nor Collier shall be required to file any UCC-1 financing statements, notices of lien or any similar document or take any other action (including possession of any of the Collateral) in order to validate the perfection of any DIP Liens, Collier Replacement Liens or BofA Replacement Liens. If any Lender or Collier shall, in its discretion, choose to file or record any such mortgages, deeds of trust, security deeds, notices of lien, or UCC-1 financing statements, or take any other action to validate the perfection of any part of the DIP Liens, BofA Replacement Liens, or Collier Replacement Liens, Debtor and its respective officers are directed to execute any documents or instruments as Lenders and Collier shall reasonably request, and all such documents and instruments shall be deemed to have been filed or recorded at the time and on the date of entry of this Order. Each of Lenders and Collier may, in its discretion, file a certified copy of this Order in any filing office in any jurisdiction in which Debtor is organized or has or maintains any Collateral or an office, and each filing office is directed to accept such certified copy of this Order for filing and recording.

12.     Reimbursement of Expenses. All reasonable costs and expenses incurred by DIP Lender in connection with the negotiation and drafting of the DIP Financing Documents (or any amendments thereto), the preservation, perfection, protection and enforcement of DIP Lender's rights hereunder or under the DIP Financing Documents, the collection of the DIP Obligations, or the monitoring of this Chapter 11 case, including, without limitation, all filing and recording fees and reasonable fees and expenses of attorneys, accountants, consultants, financial advisors, appraisers and other professionals incurred by DIP Lender in connection with any of the foregoing, whether any of the foregoing were incurred prior to or after the Petition Date, shall

918028.3

form a part of the DIP Obligations and shall be paid by Debtor (without the necessity of filing any application with or obtaining further order from the Court) in accordance with the terms of the DIP Financing Documents. In no event shall any statement submitted by any Lender to Debtor, the Committee or any other interested person (or any of their respective Professionals) with respect to fees or expenses incurred for any professional retained by Lenders operate to waive the attorney/client privilege, the work-product doctrine, or any other evidentiary privilege or protection recognized under applicable law.

13. <u>Amendments to DIP Financing Documents</u>. Debtor and DIP Lender are hereby authorized to implement, in accordance with the terms of the DIP Financing Documents and without further order of the Court, any amendments to and modifications of any of the DIP Financing Documents on the following conditions: (i) the amendment or modification must not constitute a material change to the terms of the DIP Financing Documents, (ii) copies of the amendment or modification must be served upon counsel for the Committee (and, prior to the appointment of a Committee, upon Debtor's 20 largest unsecured creditors), the U.S. Trustee, Collier, the Investors and other interested parties specifically requesting such notice, and (iii) notice of the amendment must be filed with the Court. Any amendment or modification that constitutes a material change, to be effective, must be approved by the Court. For purposes hereof, a "material change" shall mean a change that operates to shorten the DIP Facility or the maturity of the DIP Obligations, increase the aggregate amount of the commitments of DIP Lender under the DIP Facility and this Order, increase the rate of interest other than as currently provided in or contemplated by the DIP Financing Documents, add specific Events of Default, or enlarge the nature and extent of remedies available to DIP Lender following the occurrence of an Event of Default. Without limiting the generality of the foregoing, any amendment of the DIP

918028.3

Loan Agreement to postpone or extend any date or deadline therein (including, without limitation, the Commitment Termination Date) shall not constitute a "material change" and may be effectuated by Debtor and DIP Lender without the need for further approval of the Court.

14.    Events of Default; Remedies.

(a)    Events of Default and Remedies.    Upon or after the occurrence of an "Event of Default" under (and as defined in) the DIP Loan Agreement, including, without limitation, an Event of Default resulting from the failure of Debtor duly and punctually to observe, perform or discharge any obligation or duty imposed upon it by this Order or any of the DIP Financing Documents; the appointment in this Chapter 11 case of a trustee or an examiner with expanded powers (powers beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) under Section 1106(b) of the Bankruptcy Code; the dismissal or conversion to Chapter 7 of this Chapter 11 case; the filing of a motion by Debtor to convert this Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code or to dismiss this Chapter 11 case; this Order is altered, amended, vacated, supplemented, modified, stayed or reversed on appeal or Debtor shall file any motion to alter, amend, vacate, supplement or modify this Order without DIP Lender's prior consent; or a final financing order acceptable to DIP Lender is not entered on or before March 15, 2011, then DIP Lender shall be fully authorized, in its sole discretion, to terminate further Credit Extensions under the DIP Facility, demand payment of all DIP Obligations, and hold and apply any balances in any accounts of Debtor to the payment or cash collateralization of any of the DIP Obligations; and (i) Lenders may file an emergency or expedited motion seeking relief from the automatic stay imposed by 11 U.S.C. § 362(a) as to some or all of the Collateral (a *"Stay Relief Motion"*) and obtain a hearing on the Stay Relief Motion with five (5) business days' notice to counsel for Debtor, counsel for the Committee (or,

-29-

prior to the appointment of the Committee, upon Debtor's 20 largest unsecured creditors) and the U.S. Trustee, (ii) Debtor irrevocably consents to any Stay Relief Motion being heard on an expedited or emergency basis by the Court, and (iii) at any hearing on a Stay Relief Motion, the only issue to be decided by the Court shall be whether an Event of Default has occurred and exists. Lenders may, subject to entry of an order of the Court granting a Stay Relief Motion, enforce the DIP Liens, BofA Pre-Petition Liens and BofA Replacement Liens with respect to the Collateral, take all other actions and exercise all other remedies under the DIP Financing Documents, Pre-Petition First Lien Loan Documents and applicable law that may be necessary or deemed appropriate by Lenders to collect any of the DIP Obligations and Pre-Petition First Lien Debt, proceed against or realize upon all or any portion of the Collateral as if this Chapter 11 case or any superseding Chapter 7 case was not pending, and otherwise enforce any of the provisions of this Order.

(b)    _Application of Collateral Proceeds_. Notwithstanding any contrary provision contained in this Order (including, without limitation, any contrary provision contained in paragraph 7 of this Order), if Lenders shall proceed to enforce their Liens in respect of any Collateral, then Lenders may, in their discretion, elect to apply all proceeds of the Collateral (including, without limitation, proceeds of Pre-Petition Collateral) to the payment of the DIP Obligations and the Pre-Petition First Lien Debt in such order of application as Lenders may elect in their discretion. _[handwritten: if permitted under subparagraph (a) above,]_

(c)    _Protection of Landlords and Mortgagees_. In the course of exercising its rights to take possession of the Collateral following default, DIP Lender shall repair any and all damage to any premises it enters that is caused by its occupation thereof, or that is caused by its removal of the Collateral, in either case to the reasonable satisfaction of the landlord, or the

-30-

reasonable satisfaction of the mortgagee of any Debtor owned premises, or at DIP Lender's option, DIP Lender shall provide the landlord (or mortgagee) compensation to the landlord's (or mortgagee's) reasonable satisfaction for the such damage. In consideration for such obligation of the DIP Lender, landlord (or mortgagee) will not hinder DIP Lender's actions in assembling the Collateral located on or affixed to such premises as quickly as practicable without charge, will grant DIP Lender access to such premises at a time reasonably convenient to the parties, and will not hinder DIP Lender's actions in enforcing its lien on Collateral in accordance with this provision.

(d)     Rights Cumulative. The rights, remedies, powers and privileges conferred upon Lenders pursuant to this Order shall be in addition to and cumulative with those contained in the DIP Financing Documents and the Pre-Petition First Lien Loan Documents.

15.     Monitoring of Collateral.

(a)     Inspection Rights. Representatives of Lenders shall be authorized to visit the business premises of Debtor and its subsidiaries to (i) inspect any Collateral or other assets, (ii) inspect and make copies of any books and records of Debtor, and (iii) verify or obtain supporting details concerning the financial information to be provided to Lenders hereunder or under any of the DIP Financing Documents or Pre-Petition First Lien Loan Documents, all as permitted by the DIP Financing Documents and Pre-Petition First Lien Loan Documents.

(b)     DIP Lender's Right to Retain Professional Persons. DIP Lender shall be authorized to retain attorneys, appraisers, consultants and financial advisors, at Debtor's expense, which attorneys, appraisers, consultants and advisors shall be afforded reasonable access to the Collateral and Debtor's business premises and records, during normal business hours, for purposes of monitoring the business of Debtor, verifying Debtor's compliance with the terms of

918028.3

the DIP Financing Documents, this Order and the Pre-Petition First Lien Loan Documents, and analyzing or appraising all or any part of the Collateral.

16. <u>Modification of Automatic Stay</u>. The automatic stay provisions of Section 362 of the Bankruptcy Code are hereby modified and lifted as to Lenders and Collier to the extent necessary to implement the provisions of this Order and the DIP Financing Documents, thereby permitting Lenders, *inter alia*, to receive collections and proceeds of Collateral for application to the Pre-Petition First Lien Debt and the DIP Obligations as provided herein, to file or record any UCC-1 financing statements, mortgages, deeds of trust, security deeds and other instruments and documents evidencing or validating the perfection of the DIP Liens, the BofA Replacement Liens and the Collier Replacement Liens, and to enforce the DIP Liens, BofA Pre-Petition Liens and BofA Replacement Liens as and to the extent authorized by this Order.

17. <u>Effect of Appeal</u>. Consistent with 364(e) of the Bankruptcy Code, if any or all of the provisions of this Order are hereafter modified, vacated or stayed on appeal:

(a) such stay, modification or vacation shall not affect the validity of any obligation, indebtedness or liability incurred or liens granted by Debtor to Lenders prior to the effective date of such stay, modification or vacation, or the validity, enforceability or priority of any liens, rights or claims authorized or created under the original provisions of this Order or pursuant to the DIP Financing Documents; and

(b) any indebtedness, obligation or liability incurred by Debtor to DIP Lender under the DIP Financing Documents prior to the effective date of such stay, modification or vacation shall be governed in all respects by the original provisions of this Order and the DIP Financing Documents, and DIP Lender shall be entitled to all the rights, remedies, privileges and benefits, including the DIP Liens and priorities granted herein and pursuant to the DIP Financing

918028.3

Documents, with respect to any such indebtedness, obligation or liability. All Credit Extensions under the DIP Financing Documents are deemed to have been made in reliance upon this Order, and, therefore, the indebtedness resulting from such Credit Extensions prior to the effective date of any stay, modification or vacation of this Order cannot as a result of any subsequent order in this Chapter 11 case, or any superseding case, of Debtor (i) be subordinated or (ii) be deprived of the benefit or priority of the DIP Liens and Superpriority Claim granted to DIP Lender under this Order or the DIP Financing Documents.

18. <u>Deadline for Challenge to BofA Pre-Petition Liens and Claims.</u> Debtor has acknowledged, stipulated and agreed (the "*Stipulation*") that the Pre-Petition First Lien Debt and all liens and security interests of Pre-Petition First Lien Lender in the Pre-Petition Collateral are legal, valid, binding, enforceable, perfected and non-avoidable; the Pre-Petition First Lien Debt is allowable as a fully secured claim against Debtor; and the Pre-Petition First Lien Debt is not subject to offset, counterclaim, recoupment, equitable subordination or recharacterization. In consideration of DIP Lender's agreement to provide Credit Extensions pursuant to the DIP Financing Documents, Debtor has waived and shall be barred (a) from challenging the amount, validity, extent, perfection or priority of or seeking to set aside, avoid, offset or subordinate any of the Pre-Petition First Lien Debt or any liens or security interests of Pre-Petition First Lien Lender in any Pre-Petition Collateral and (b) from asserting against Pre-Petition First Lien Lender or DIP Lender any claim under any breach of contract or lender liability theories or pursuant to Sections 105, 510, 544, 546, 547, 548, 549 or 550 of the Bankruptcy Code. The foregoing Stipulation regarding the Pre-Petition First Lien Debt and the security interests of Pre-Petition First Lien Lender in the Pre-Petition Collateral shall be subject only to the right of an interested party (other than Debtor) having standing to do so to commence

-33-

an appropriate adversary proceeding or contested matter objecting to the validity or amount of the Pre-Petition First Lien Debt, or the validity, extent, perfection, priority or non-avoidability of the Pre-Petition Liens and security interests of Pre-Petition First Lien Lender in the Pre-Petition Collateral or seeking disgorgement of all or part of the payment of the Pre-Petition First Lien Debt, which adversary proceeding or contested matter must be filed no later than ~~the earlier to~~ sixty (60) ~~occur of (i) 30~~ days after the date of entry of this Order ~~or (ii) the date of any closing of a sale of all or substantially all of Debtor's assets or any closing of a sale of the right to sell such assets as an agent of Debtor.~~ If such adversary proceeding or contested matter is not timely filed, then the liens and security interests of Pre-Petition First Lien Lender in the Pre-Petition Collateral shall be deemed legal, valid, binding, enforceable, perfected and unavoidable and all of the Pre-Petition First Lien Debt shall be conclusive and binding upon all parties in interest in this case and in any superseding Chapter 7 case, including any subsequently appointed trustee, as a legal, valid, binding, enforceable secured claim that is not subject to offset, counterclaim, equitable subordination, recharacterization or other defense or claim.

19. <u>Service of Order</u>. Promptly after the entry of this Order, Debtor shall mail, by first class mail, a copy of this Order, the Motion (and all exhibits attached to the Motion), and a notice of the Final Hearing, to counsel for Lenders, the U.S. Trustee, counsel for the Committee (or, if the Committee has not been formed and selected counsel as of the entry of this Order, then the 20 largest unsecured creditors of Debtor), Collier and its counsel, the Investors, the Specific Inventory Creditors, JBC, the Internal Revenue Service, and all parties who have filed requests for notices under Rule 2002 of the Bankruptcy Rules, and shall file a certificate of service regarding same with the Clerk of the Court. Such service shall constitute good and sufficient notice of the Final Hearing.

918028.3

20.    No Deemed Control. By consenting to this Order, making Credit Extensions or administering the financing relationship with Debtor pursuant to the DIP Financing Documents, Lenders shall not be deemed to be in control of Debtor or its operations or to be acting as a "responsible person," "managing agent" or "owner or operator" (as such terms are defined in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar state or federal statute) with respect to the operation or management of Debtor.

21.    Binding Effect; Successors and Assigns. The provisions of this Order shall be binding upon all parties in interest in this Chapter 11 case, including, without limitation, Lenders and Debtor and their respective successors and assigns (including any Chapter 11 trustee hereafter appointed for the estate of Debtor or any Chapter 7 trustee appointed or elected in a superseding Chapter 7 case), and shall inure to the benefit of Lenders and Lenders' respective successors and assigns. In no event shall DIP Lender have any obligation to make Credit Extensions to any Chapter 7 or Chapter 11 trustee appointed or elected for the estate of Debtor.

22.    Final Hearing. The Final Hearing shall be held at 1:00 o'clock p.m., on March 8, 2011, at Courtroom 10B, Sam M. Gibbons United States Courthouse, 701 N. Florida Avenue, Tampa, Florida. If no objection to the Motion or this Order is timely filed and asserted at the Final Hearing, then this Order shall continue in effect in accordance with its terms subject to such modifications as the Court may make at the Final Hearing and that are acceptable to DIP Lender. If any or all of the provisions of this Order are modified, vacated or stayed as the result of any objection timely filed and asserted at the Final Hearing, then, without limiting the provisions of paragraph 17 hereof, any DIP Obligations incurred prior to the effective date of such modification, vacation or stay shall be governed in all respects by the original provisions of

-35-

this Order, and DIP Lender shall be entitled to the protections afforded under Section 364(e) of the Bankruptcy Code and to all the rights, remedies, privileges, and benefits, including, without limitation, the DIP Liens and superiority claim status, granted herein and pursuant to the DIP Financing Documents with respect to all such DIP Obligations.

23. <u>Objection Deadline</u>. If any party in interest shall have an objection to any of the provisions of this Order, such party shall be authorized to assert such objection at the Final Hearing, provided that a written statement setting forth the basis for such objection is filed with the Court, and concurrently served upon the Office of the United States Trustee, Timberlake Annex, Suite 1200, 501 East Polk Street, Tampa, Florida 33602; counsel for Debtor, Berger Singerman, P.A., 200 South Biscayne Boulevard, Miami, Florida 33131-5308, <u>Attention</u>: Paul Steven Singerman, Esq. (Singerman@bergersingerman.com) and Jordi Guso, Esq. (jguso@bergersingerman.com); counsel for Lenders, Parker Hudson Rainer & Dobbs LLP, 1500 Marquis Two Tower, 285 Peachtree Center Avenue, Atlanta, Georgia 30303, <u>Attention</u>: C. Edward Dobbs, Esq. (edobbs@phrd.com) and James S. Rankin, Jr. (jrankin@phrd.com); and co-counsel for Lenders, Bush Ross, Post Office Box 3913, Tampa, Florida 33601-3913, <u>Attention</u>: Jeffrey W. Warren, Esq. (jwarren@bushross.com), so that such objections and responses are filed on or before 5:00 p.m., prevailing Eastern time on **March 7**, 2011. Unless an objecting party shall be and appear at the Final Hearing to assert the basis for such objection before the Court, such objection shall be deemed to have been waived and abandoned by such objecting party.

24. <u>Immediate Effectiveness</u>. This Order shall be valid, take full effect and be enforceable immediately upon entry hereof notwithstanding any contrary Bankruptcy Rule or Rule of Civil Procedure; there shall be no stay of execution or effectiveness of this Order; and

918028.3

any stay of the effectiveness of this Order that might otherwise apply is hereby waived for cause shown.

25.     Inconsistencies.  To the extent that any provisions in the DIP Loan Agreement are expressly inconsistent with any of the provisions of this Order, the provisions of this Order shall govern and control.

**DONE and ORDERED** in Chambers in Tampa, Florida on February 23, 2011

_____
United States Bankruptcy Judge
HONORABLE CARYL E. DELANO

Service to L20
Debtor's Attorney

918028.3