UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:

ROBB & STUCKY LIMITED LLLP,
a Florida Limited Liability Limited Partnership,[1]

                Debtor.

_____/

Case No. 8:11-bk-02801-CED
Chapter 11

**ORDER APPROVING AGENCY AGREEMENT,**
**STORE CLOSING SALES AND RELATED RELIEF**

**THIS MATTER** came before the Court on the 8th day of March, 2011 at 1:00 p.m. in

Tampa, Florida, upon the *Debtor's Emergency Motion Pursuant to Sections 105(a), 363, and*

*365 of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006 for (I) Approval of*

*Procedures in Connection With the Sale of All or Substantially All of the Debtors' Assets,*

*(II) Authorization to Enter Into Stalking Horse Agreement in Connection Therewith,*

*(III) Approval of the Payment of Stalking Horse Protections, and (IV) the Setting of Related*

*Auction and Hearing Dates* [D.E. 33] (the "**Motion**");[2] and the Court having jurisdiction to

consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and

1334; and consideration of the Motion and the relief requested therein being a core proceeding

pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C.

§§ 1408 and 1409; and, as evidenced by the Affidavit of Service filed by Epiq Bankruptcy

Solutions, LLC, the Debtor's noticing and claims agent [D.E. #84], due and proper notice of the

---

[1] The last four digits of the taxpayer identification number for the Debtor are 6415.  The mailing address for the Debtor is 14550 Plantation Road, Fort Myers, FL 33912.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion or in that certain Agency Agreement dated February 16, 2011, as amended,  by and between the Debtor and a joint venture comprised of Hudson Capital Partners, LLC and HYPERAMS, LLC (the "**Agency Agreement**"), annexed to the Motion as **Exhibit A**.

Sale having been provided to (i) the Office of the United States Trustee for the Middle District of Florida, (ii) the attorneys for BOA, (iii) the attorneys for the Second Lien Lender, (iv) the attorneys for the Third Lien Lender[3], (v) all parties listed on the mailing matrix filed with the petition in this case, (vi) all Interested Parties, (vii) all attorney general's offices in the states in which the Debtor does business, (viii) all county attorney's offices in the counties in which the Debtor does business; and (ix) all other and all affected federal and local regulatory and taxing authorities, including the Internal Revenue Service, and it appearing that no other or further notice need be provided; and a hearing (the "**Hearing**") having been held to consider the relief requested in the Motion; and the appearances of all interested parties having been noted in the record of the Hearing; and upon the *Declaration of Kevin F. Regan in Support of First Day Pleadings*, and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtor, its estate and creditors and all parties in interest, and the Court having considered (i) the *Limited Objection of General Growth Properties, Inc. and Turnberry Associates to the Debtor's Emergency Motion for (I) Approval of Procedures in Connection With the Sale of All or Substantially All of the Debtor's Assets, (II) Authorization to Enter Into Stalking Horse Agreement in Connection Therewith, (III) Approval of the Payment of Stalking Horse Protections, and (IV) the Setting of Related Auction and Sale Hearing Dates* [D.E. No. 158] (the "**General Growth and Turnberry Objection**"); (ii) the *Limited Objection to the Debtors Motion to Sell Substantially all of Debtors Assets Filed by Ryan C Reinert on behalf of Creditor Terranova Corporation, as Receiver for RCA Center II of Florida, LLC* [D.E. 156] (the "**Terranova Objection**"); (iii) the *Precautionary Objection to Motion for Approval of Sale of Assets and Potential Assumption and Assignment of Real Property Lease, Objection to Request for Authorization to Conduct Going Out of Business*

---

[3] . As defined in the Debtor's Emergency Motion to Approve Secured Post-Petition Financing [D.E. 24].

*Sales, and Cure Claim Objection Filed by Andrew S Conway on behalf of Creditor Taubman Landlords* [D.E. 135] (the "**Taubman Objection**" and together with the General Growth and Turnberry Objection and the Terranova Objection the "**Landlord Objections**"); (iv) the *Objection to the Proposed Sale of All or Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, and Encumbrances Filed by Brian T. Fitzgerald on behalf of Creditor Doug Belden* [D.E. 155] (the "**Hillsborough County Tax Collector Objection**"); and (v) the *Objection to the Proposed Sale of All or Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, and Encumbrances, filed by Milan Brkich on behalf of Creditor Sarasota County Tax Collector* [D.E. 137] (the "**Sarasota County Tax Collector Objection**" and together with the Hillsborough County Tax Collector Objection the "**County Tax Collector Objections**") (all of the foregoing (i)-(v), collectively the "**Objections**") as well as the *Debtor's Omnibus Response To Limited Objections To The Debtor's Emergency Motion For (I) Approval of Procedures In Connection With The Sale of All or Substantially All of The Debtor's Assets, (II) Authorization To Enter Into Stalking Horse Agreement In Connection Therewith, (III) Approval of The Payment of Stalking Horse Protections, and (IV) The Setting of Related Auction and Sale Hearing Dates* [D.E. 181] (the "**Omnibus Response**"), and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

FOUND AND DETERMINED THAT:

     A.     This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this case and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      The statutory predicates for the relief requested are sections 105(a) and 363 of the Bankruptcy Code and Rules 2002, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

C.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.   To the extent any of the findings of fact constitute conclusions of law, they are adopted as such.   To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

D.      Notice of the Motion and of the Hearing was given in accordance with the directive of the Court and as otherwise required by applicable law, as evidenced by the affidavits of service on file with the Clerk of the Court.

E.      The notice of the Sale, the Motion and of the Hearing was adequate and sufficient under the circumstances, and any otherwise applicable requirement for notice is hereby waived and dispensed with.  A reasonable opportunity to object or to be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities.

F.      As demonstrated by testimony proffered at the Hearing and representations of counsel to the Debtor and other parties in interest made at the Hearing, the Debtor has conducted the bidding solicitation and auction process fairly, with adequate opportunity for interested parties to submit Qualified Bids and in compliance with this Court's *Order Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006 (I) Approving Procedures in Connection With the Sale of All or Substantially All of the Debtor's  Assets, (II) Authorizing the Debtors to Enter Into Stalking Horse Agreement in Connection Therewith, (III) Approving the Payment of Stalking Horse Protections, And (IV) Setting Related Auction and*

*Sale Hearing Dates*, entered on February 23, 2011 [D.E. 64] (the "**Bidding Procedures Order**").

G.      The offer of the Agent, upon the terms and conditions set forth in the Agency Agreement, including the form and total consideration to be realized by the Debtor pursuant to the Agency Agreement, (i) is the highest and best offer received by the Debtor; (ii) is fair and reasonable; and (iii) is in the best interests of the Debtor's estate.

H.      The transactions contemplated by the Agency Agreement do not include the sale or lease of personally identifiable information, as defined in Section 101(41A) of the Bankruptcy Code ("**Personally Identifiable Information**") (or assets containing personally identifiable information).

I.      The Debtor (i) has full partnership power and authority to execute and deliver the Agency Agreement and all other documents contemplated thereby, and the Sale of the Debtor's Merchandise has been duly and validly authorized by all necessary partnership action of the Debtor, (ii) has all of the partnership power and authority necessary to consummate the transactions contemplated by the Agency Agreement, and (iii) has taken all partnership action necessary to authorize and approve the Agency Agreement and the consummation of the transactions contemplated thereby. No consents or approvals, other than those expressly provided for in the Agency Agreement, are required for the Debtor to consummate such transactions.

J.      The Agency Agreement was negotiated and entered into in good faith, based upon arm's length bargaining, and without collusion or fraud. Neither the Debtor nor the Agent has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy

Code or cause the application of or implicate Section 363(n) of the Bankruptcy Code to the Agency Agreement or to the consummation of the transactions contemplated thereby.

K.     The Debtor was free to deal with any other party interested in liquidating some or all of the Debtor's assets. The Agent has not violated section 363(n) of the Bankruptcy Code by any action or inaction. Specifically, the Agent has not acted in a collusive manner with any person and the Agent was not controlled by any agreement among bidders. The Agent is not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code. No common identity of directors or controlling stockholders exists between the Agent and the Debtor. Now, therefore, it is hereby,

**ORDERED, ADJUDGED AND DECREED THAT**:

1.     The Motion is granted to the extent provided herein. All Objections to the Motion that have not been withdrawn, waived, settled, or specifically addressed in this Order, and all reservations of rights included in such Objections, are overruled in all respects on the merits and denied; provided, however, that with respect to the Taubman Objection, the Court reserves jurisdiction to adjudicate and resolve any disputes between the parties of such Objection upon request of the Debtor, such landlord or the Agent on an expedited basis.

2.     The Debtor is hereby authorized and empowered to enter into the Agency Agreement, and the Agency Agreement is hereby approved in its entirety and is incorporated herein by reference. All amounts payable to the Agent under the Agency Agreement shall be payable to the Agent without the need for any application of the Agent therefor or a further order of the Court.

3.     The Debtor and the Agent are hereby authorized, pursuant to Sections 105(a) and 363(b)(1) of the Bankruptcy Code, to conduct the Sale at the Closing Stores in accordance with

the Agency Agreement, the Sale Guidelines and the Landlord Side Letters (hereinafter defined), if any, with respect to the Closing Stores covered by such Landlord Side Letters, which Sale Guidelines are hereby approved in the form attached to the Agency Agreement. Notwithstanding anything to the contrary in the Agency Agreement, the Agent shall be entitled to enter into one or more side letters with landlords of Closing Stores to modify, amend or supplement the Sale Guidelines with respect to the conduct of the Sale in such Closing Store (each, a "**Landlord Side Letter**"). To the extent a conflict exists between the terms of a Landlord Side Letter and the Sale Guidelines with respect to the Closing Store covered by such Landlord Side Letter, the terms of the Landlord Side Letter shall control. The Court reserves jurisdiction to adjudicate and resolve any disputes with respect to any Landlord Side Letter on an expedited basis. The Occupancy Expenses set forth in Exhibit 4.1(a) of the Agency Agreement constitute the Occupancy Expenses to be paid by the Agent to the Debtor with respect to the Inventoried Location in question and such Exhibit 4.1(a) shall not limit the obligations of the Debtor under the leases covering such Inventoried Locations.

4. Except as otherwise provided in the Agency Agreement or this Order, pursuant to Section 363(f) of the Bankruptcy Code, the assets being sold pursuant to the Agency Agreement shall be sold free and clear of any and all mortgages, security interests, conditional sales or title retention agreements, pledges, hypothecations, liens, judgments, encumbrances or claims of any kind or nature (including, without limitation, any and all "claims" as defined in Section 101(5) of the Bankruptcy Code), including, without limitation, the liens and security interests of BOA and the Second Lien Lender, whether arising by agreement, any statute or otherwise and whether arising before, on or after the date on which this chapter 11 case was commenced (collectively, the "**Liens**"), with such Liens to attach as set forth in Section 2.2(v) of

the Agency Agreement (collectively, the "**Transaction Proceeds**") with the same validity, force and effect as the same had with respect to the assets at issue, subject to any and all defenses, claims and/or counterclaims or setoffs the Debtor may possess. The Transaction Proceeds shall be disbursed in accordance with the terms of the *Second Order (1) Authorizing Debtor-In-Possession to Grant Interim Financing, Grant Security Interests and Accord Priority Status Pursuant to 11 U.S.C. Section 361, 364(c) and (d); (2) Modifying Automatic Stay and (3) Scheduling Final Hearing* (the "**Second Interim DIP Order**"). Upon the funding by the Agent of the Initial Guaranteed Amount, the Debtor shall escrow, pending further order of the Court, the amounts due on account of ad valorem taxes and tangible personal property taxes secured by Liens on the Merchandise.

5. All of the transactions contemplated by the Agency Agreement shall be protected by Sections 363(m) and 364(e) of the Bankruptcy Code in the event that this Order is reversed or modified on appeal. The transactions contemplated by the Agency Agreement are not subject to avoidance pursuant to Section 363(n) of the Bankruptcy Code.

6. Unless otherwise ordered by the Court, all newspapers and other advertising media in which the Sale may be advertised and all landlords of any Inventoried Location are directed to accept this Order as binding authority so as to authorize the Debtor and the Agent to consummate the Agency Agreement, and the transactions contemplated thereby, and to conduct the Sale at the Closing Stores and to occupy and use the Distribution Centers, including, without limitation, conducting and advertising of the Sale (at the contractual rates charged to the Debtor prior to the Petition Date) in accordance with the Agency Agreement, the Sale Guidelines, any Landlord Side Letter (with respect to the Closing Store covered thereby) and this Order; and no further approval, license or permits of any governmental authority shall be required.

7.     Except as expressly provided herein or in the Sales Guidelines, and except as to any governmental unit of any state in which a Closing Store is located (referred to herein as a "**State**") (as to which this paragraph shall not apply) to enforce any federal, state and local public health and safety laws (collectively, "**General Laws**" or "**Safety Laws**"): no person or entity, including but not limited to any landlord or any federal governmental unit or any city, town, county, parish, or municipal or other local (referred to herein as "**Local**") governmental unit (as defined in Section 101(27) of the Bankruptcy Code), that was (i) served with a copy of the Motion or (ii) served with a copy of this Order that does not object pursuant to the provisions of this Order, shall in contravention of this Order take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Sale, or the advertising and promotion (including the use of signwalkers) of such Sale, and all such parties and persons of every nature and description, including landlords and utility companies and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, or otherwise impeding the conduct of the Sale and/or (b) instituting any action or proceeding in any court or administrative body seeking an order or judgment against, among others, the Debtor, the Agent, or the Debtor's landlords for the Closing Stores, that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Sale as provided for herein and/or seek to recover damages for breach(es) of covenants or provisions in any lease or sublease based upon any relief authorized herein.

8.     The Debtor and the Agent are hereby authorized to take such actions necessary and appropriate to implement the Agency Agreement and to conduct the Sale without necessity of further order of this Court as provided by the Agency Agreement (including the Sale Guidelines and any applicable Landlord Side Letter), including, but not limited to, advertising

the Sale through the posting of signs (including the use of exterior banners) at (i) non-enclosed mall stores, and (ii) enclosed mall stores to the extent the applicable Closing Store entrance does not require entry into the enclosed mall common area, use of sign walkers and street signage, in accordance with the Agency Agreement and as otherwise provided in the Sale Guidelines or any applicable Landlord Side Letter with respect to the applicable Closing Store.

9. Provided that the Sale is conducted in accordance with the terms of this Order, the Sale Guidelines, the applicable Landlord Side Letter with respect to the applicable Closing Store and the Agency Agreement, and in light of the provisions in the laws of many governmental units that exempt court-ordered sales from their provisions, subject to paragraphs 13 through 17, the Debtor and the Agent are authorized to conduct the Sale in accordance with the terms of this Order, the Sale Guidelines, the applicable Landlord Side Letters (with respect to the applicable Closing Store) and the Agency Agreement without the necessity of compliance with any such GOB Laws. For purposes of this Order, GOB Laws shall mean any federal, state or local statute or ordinance or licensing requirement solely directed at regulating store closing, "going out of business," liquidation, bankruptcy, auction or similar themed sales ("**GOB Sales**"), including laws restricting safe, professional and non-deceptive, customary advertising of GOB Sales, such as signs, banners, posting of signage, and use of sign walkers, and including ordinances establishing licensing or permitting requirements, waiting periods, time limits or bulk sale restrictions that would otherwise apply to the Sale ("**GOB Laws**"). For the avoidance of doubt, the Sale shall not be exempt from, and the Agent shall not be entitled to a presumption of compliance with laws other than GOB Laws, including General Laws.

10. Subject to the provisions of paragraphs 9 and 13, Agent's use, in conformity with the Sale Guidelines, the applicable Landlord Side Letter (with respect to the applicable Closing

Store) and this Order, of (i) signwalkers; (ii) interior store signage and banners; and (iii) exterior banners ("**Banner and Signwalker Advertising**"), is authorized notwithstanding any lease provisions which purport to regulate, prohibit, restrict, or in any way limit such activity so long as such activity is undertaken by Agent in a safe, professional and non-deceptive manner.  Any person (including without limitation any landlord but excluding any governmental unit), that, after having received a copy of this Order, and after having been specifically advised in writing of the provisions of this Order, continues to interfere with Banner and Signwalker Advertising undertaken in compliance with this Order, shall be liable to the Agent and/or the Debtor and affected landlord(s) for any and all damages resulting from such continued interference.

11.     Except as otherwise provided in paragraphs 13 through 17, this Court shall retain exclusive jurisdiction to resolve any disputes regarding this Order and the actions authorized hereunder brought by or against any person, including (i) any claim or issue relating to any efforts to prohibit, restrict or in any way limit Banner and Signwalker Advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional and non-deceptive manner, (ii) any claim of the Debtor, the landlords and/or the Agent for protection from interference with the Sale and (iii) any other disputes related to the Sale or arising under the Agency Agreement or the implementation thereof.  Except as provided in paragraph 13, no actions shall be taken by any person against the Debtor, the Agent, the landlords or the Sale until this Court has resolved such dispute.  This Court shall hear any such disputes on an expedited basis, as may be appropriate under the circumstances.

12.     Except as expressly provided in the Agency Agreement, the Sale at the Closing Stores shall be conducted by the Debtor and the Agent notwithstanding any restrictive provision of any lease, sublease or other agreement relative to occupancy affecting or purporting to restrict

the conduct of the Sale, the rejection of leases, abandonment of assets or "going dark" provisions and the Agent may allow a Closing Store to go dark for a period of time in order to prepare such Closing Stores for the Sale; provided, however, that nothing in this Order shall impact any objection that any of the Debtor's landlords may have to assumption, assignment or rejection of their respective lease or to any proposed cure amount or rejection damages claim in association with such assumption, assignment or rejection.

13.    Nothing in this Order shall be deemed to bar any governmental unit from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtor's or Agent's right to assert that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Order or otherwise, pursuant to paragraph 17. To the extent reasonably practicable, each applicable governmental unit shall provide the Debtor and Agent and any affected landlord with reasonable notice and opportunity to cure any alleged violation of any applicable law or regulation prior to instituting formal administrative or judicial proceedings; provided, however, cessation of alleged unlawful conduct after notice shall not, in and of itself, render moot court action by any State, including the imposition of injunctive relief, even if the Debtor or the Agent has ceased the alleged unlawful conduct. No party waives any rights to argue any position with respect to whether the conduct was in compliance with this Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code. Nothing in this Order shall be deemed to have made any rulings on any such issues.

14.    The Debtor shall serve copies of this Order within five (5) business days, via first class mail, upon (i) the State Attorney General's offices (upon (x) Chief or Director of the Consumer Protection Division or Bureau; and (y) Chief or Director of the Bankruptcy Division

or Bureau) and State Consumer Protection Agency for each State, and (ii) the Local mayor or similar official representative of each village, town or city, and the county or parish where a Store is located, addressed to the attention of the municipal, city or county attorney, in each case to the consumer protection division.

15.     If there is a dispute between the Debtor or the Agent and a governmental unit as to whether the general conduct of the Sale is in accordance with this Order, the Agency Agreement or the Sales Guidelines or would violate a General Law and should be limited or barred (a "**Reserved Dispute**"), resolution of that Reserved Dispute will take place before this Court, as provided in this paragraph. Any time before the fifteenth (15th) day following the service of this Order as provided for in paragraph 14, any governmental unit may assert a Reserved Dispute by sending a notice explaining the nature of the dispute to counsel for the Debtor, the Agent and the Creditors' Committee. If the Debtor and the governmental unit are unable to resolve the Reserved Dispute within ten (10) days of receipt of the notice, either party may file a motion with the Court requesting resolution of the dispute (a "**Dispute Resolution Motion**"). Any such Dispute Resolution Motion shall also be served upon any affected landlord(s). Any issues relating to a Reserved Dispute shall not affect the finality of this Order or limit or interfere with the conduct of the Sale prior to any ruling by this Court on said Reserved Dispute.

16.     If such Dispute Resolution Motion is timely filed, the Debtor and/or the Agent shall be entitled to assert that the provisions of this Order and/or the conduct of the Sale do not violate the General Law, or, if they do, that such General Law is subject to preemption by the Bankruptcy Code. The governmental unit shall be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the validity of this Order, the

requirements of its General Laws, or the lack of any preemption of such General Laws by the Bankruptcy Code. Nothing in this Order, including the presumption stated in paragraph 9, shall constitute a ruling with respect to any issues to be raised in the Dispute Resolution Motion, including whether the General Law is preempted by the Bankruptcy Code, whether the automatic stay applies to any proposed action, or whether sovereign immunity applies to any action relating to a governmental unit.

17.     Intentionally deleted.

18.     Throughout the Sale Term, the Agent shall have the right to use the Closing Stores, all related Closing Store services, furniture, fixtures, equipment and other assets of Debtor as designated in the Agency Agreement for the purpose of conducting the Sale, in each case solely in accordance with the provisions of the Agency Agreement and as described in the Agency Agreement.

19.     Until the Sale Termination Date, the Agent shall be granted a limited license and right to use the Debtor's trade names, logos and customer lists relating to and used in connection with the operation of the Closing Stores, solely for the purpose of advertising the Sale in accordance with the terms of the Agency Agreement.

20.     Except as expressly provided for in the Agency Agreement, nothing in this Order or the Agency Agreement and none of the Agent's actions taken in respect of the Sale shall be deemed to constitute an assumption by Agent of any of the Debtor's obligations relating to any of the Debtor's employees. Moreover, Agent shall not become liable under any collective bargaining or employment agreement or be deemed a joint or successor employer with respect to such employees.

21.     Except as set forth in the Agency Agreement, the Debtor and/or the Agent (as the case may be) are authorized and empowered to transfer assets among the Closing Stores.  Agent shall be permitted to include in the Sale, and shall have the right to sell, as consigned goods the Additional Agent Merchandise in accordance with the terms and provisions of the Agency Agreement.  At all times, title to the Additional Agent Merchandise shall remain with Agent and the Additional Agent Merchandise and the proceeds thereof, shall not constitute property of the estate of the Debtor.

22.     The Debtor grants to Agent, solely in accordance with the terms of the Agency Agreement, pursuant to Section 364(d) of the Bankruptcy Code a valid and perfected first priority security interest (subject to the subordination provisions set forth below in this Section) in and lien upon the Merchandise and the Proceeds to secure all obligations of Debtor under the Agency Agreement; provided, however, that until the payment of the Guaranteed Amount, the Recovery Amount and the Augment Amout, if any, in full, then, Agent's security interest shall remain junior and subordinate in all respects to the liens, security interests and claims of the Lenders to the extent of the unpaid portion of the Guaranteed Amount  the Recovery Amount, the Augment Recovery Amount and Expenses.  Upon entry of this Order and payment of the Initial Guaranty Payment and the issuance of the Guaranty L/C and the Expense L/C, the security interest granted to Agent shall be deemed properly perfected without the need for further filings or documentation.

23.     The provisions of this Order and the Agency Agreement and any actions taken pursuant hereto or thereto shall survive the entry of any order which may be entered confirming or consummating any plan of reorganization of the Debtor or converting the Debtor's case from chapter 11 to chapter 7, and the terms and provisions of the Agency Agreement as well as the

rights and interests granted pursuant to this Order and the Agency Agreement shall continue in this or any superseding case and shall be binding upon the Debtor, the Agent and their respective successors and permitted assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtor under chapter 7 or chapter 11 of the Bankruptcy Code. Any trustee appointed in this case shall be and hereby is authorized to operate the business of the Debtor to the fullest extent necessary to permit compliance with the terms of this Order and the Agency Agreement, and the Agent and the trustee shall be and hereby are authorized to perform under this Agreement upon the appointment of a trustee with the need for further order of this Court. In the event a chapter 7 trustee determines that it needs further order of this Court in connection with the continued operation of the business, such motion shall be heard on an expedited basis.

24. To the extent that anything contained in this Order conflicts with a provision in the Agency Agreement or the Sale Guidelines or the applicable Landlord Side Letters with respect to the applicable Closing Store, this Order shall govern and control. This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the implementation of this Order or otherwise arising from or related to the Agency Agreement.

25. The Agent shall not be liable for any claims against the Debtor, and the Debtor shall not be liable for any claims against the Agent, in each case, other than as expressly provided for in the Agency Agreement. The Agent shall have no successor liability whatsoever with respect to any Liens or claims of any nature that may exist against the Debtor.

26. No bulk sale or similar law shall prohibit the Debtor or the Agent from taking action contemplated by the Agency Agreement.

27.     The Debtor, the Agent and each of their respective officers, employees and agents are hereby authorized to execute such documents and to do such acts as are necessary or desirable to carry out the Sale and effectuate the Agency Agreement and the related actions set forth therein.

28.     Notwithstanding Bankruptcy Rules 4001 and 6004, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  In the absence of any person or entity obtaining a stay pending appeal, the Debtor and the Agent are free to perform under the Agency Agreement at any time, subject to the terms of the Agency Agreement.

29.     The Agent is a party in interest and shall have the ability to appear and be heard on all issues related to or otherwise connected to this Agency Agreement and the conduct of the Sale.

30.     The Auction[4] and Sale Hearing (as defined in the Bidding Procedures Order) with respect to the Debtor's assets other than the Merchandise, the Owned FF&E or assets subject to the Agency Agreement (collectively, the "**Non-GOB Assets**") are adjourned without date; provided however, to the extent that a going-concern buyer (a "**Buyer**"), the Debtors, BOA and the Second Lien Lenders, and the Creditor's Committee (collectively, the "**Key Constituents**") reach an agreement in connection with the purchase of some or all of the Non-GOB Assets, and the Buyer and the Agent (it is sole and absolute discretion) reach an agreement with respect to certain Merchandise that the Agent would otherwise sell on behalf of the Debtor as part of the GOB Sales under the Agency Agreement (the "**Alternative Sale Transaction**"), then, upon execution of an asset purchase agreement and any necessary ancillary documentation reasonably

---

[4] As defined in the Order approving the Bidding Procedures and the form of the Agency Agreement, dated February 23, 2011 (the "**Bidding Procedures Order**").

acceptable to the Key Constituents, the Debtor may, subject to the Court's availability, reinstate

the Sale Hearing with respect to the Alternative Sale Transaction as it relates to the Non-GOB

Assets, subject to the Court's calendar, on two-business days' notice to the Key Constituents and

any party with an interest in the Non-GOB Asset; provided further however, notwithstanding the

foregoing, absent the Agent's consent, determined in Agent's sole discretion, nothing contained

in the Alternative Sale Transaction or any order approving such Alternative Sale Transaction

shall modify, restrict, limit or otherwise affect the Debtor's obligations or the Agent's rights

under the Agency Agreement.

**DONE** and **ORDERED** in Tampa, Florida, on _____March 09, 2011_____.

_____

Caryl E. Delano
**UNITED STATES BANKRUPTCY JUDGE**

Copy to: Copy to Paul Steven Singerman, Esq., Berger Singerman, P.A., 200 S. Biscayne Blvd., Suite 1000, Miami, FL 33131. Additioanlly, Epiq Systems Bankruptcy Solutions, LLC will serve this Order upon all creditors.