UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:

ROBB & STUCKY LIMITED LLLP,
a Florida Limited Liability Limited Partnership,[1]

       Debtor.

Case No. 08-11-bk-02801-CED
Chapter 11

_____/

## DEBTOR'S APPLICATION TO EMPLOY AND RETAIN STREAMBANK, LLC AS ITS EXCLUSIVE AGENT TO MARKET AND SELL INTELLECTUAL PROPERTY

Robb & Stucky Limited LLLP ("**Robb & Stucky**" or the "**Debtor**"), by and through undersigned counsel and pursuant to 11 U.S.C. §§ 327(a) and 328, files this application (the "**Application**") for entry of an order, substantially in the form of **Exhibit A** (the "**Proposed Order**"), authorizing the Debtor to employ and retain Streambank, LLC ("Streambank") as its exclusive agent to market and sell the Intellectual Property (as hereinafter defined). In support of this Application, the Debtor submits the Declaration of David Peress (the "**Peress Declaration**"), a copy of which is attached as **Exhibit B** and incorporated by reference herein. In further support of this Application, the Debtor respectfully represents as follows:

### Jurisdiction

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The last four digits of the taxpayer identification number for the Debtor are 6415. The mailing address for the Debtor is 14550 Plantation Road, Fort Myers, FL 33912.

3.      The bases for the relief requested herein are section 327(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**") and Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## Background

4.      On February 18, 2011 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

5.      The Debtor is operating its business and managing its affairs as a debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

6.      On the Petition Date, the Debtor filed its *Emergency Motion for Approval of Procedures in Connection With the Sale of All or Substantially All of the Debtor's Assets, Authorization to Enter Into Stalking Horse Agreement in Connection Therewith, Approval of the Payment of Stalking Horse Protections, and the Setting of Related Auction and Hearing Dates* [D.E. No. 33] (the "**Bidding Procedures Motion**").

7.      A hearing on the Bidding Procedures Motion was held before the Court on February 23, 2011.  On the same day, the Court entered an order [D.E. No. 64] (the "**Bidding Procedures Order**") granting the Bidding Procedures Motion.

8.      Pursuant to the Bidding Procedures Order, (a) objections to the sale or to the agency agreement governing the terms of the sale (the "**Agency Agreement**") were due by March 4, 2011, (b) an auction was scheduled for March 7, 2011, and (c) a hearing to consider approval of the sale was scheduled for March 8, 2011.

9.      The Debtor conducted the auction on March 7, 2011.  The Debtor selected a joint venture comprised of Hudson Capital Partners, LLC and HYPERAMS, LLC (collectively, the

"**Agent**") as the winning bidder for the rights to conduct the liquidation sales at the Debtor's stores in accordance with the Agency Agreement.

10.     On March 8, 2011 the Court conducted a hearing to consider approval of the Debtor's selection of the Agent. On March 9, 2011, the Court entered its *Order Approving Agency Agreement, Store Closing Sales and Related Relief* [D.E. No. 192] (the "**Sale Order**").

11.     On March 9, 2011, the Agent delivered the Guaranteed Amount (as defined in the Agency Agreement) to the Debtor.

12.     On March 10, 2011, the Agent commenced the "going out of business sales" at the Debtor's stores.

**Relief Requested**

13.     By this Application, the Debtor seeks to employ and retain Streambank pursuant to section 327(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a) to act as its exclusive agent for purposes of monetizing the intellectual property assets of Robb & Stucky, which assets include, without limitation, all of the trademarks, trade names, copyrights, domain names, URLs, telephone numbers, customer data, sourcing and other data, designs and drawings, etc. (collectively, the "**Intellectual Property**") of the Debtor, wherever located and in whatever format, upon the terms and conditions contained in that certain letter dated as of April 4, 2011, between Streambank and the Debtor (such letter, together with all attachments and amendments thereto, the "**Engagement Letter**"), a copy of which is attached as **Exhibit C** and incorporated by reference herein.

**Streambank's Qualifications**

14.     The Debtor is familiar with the professional standing and reputation of Streambank. The Debtor understands that Streambank has extensive experience in and an

3

excellent reputation for providing high quality intellectual property disposition services to large and complex companies in bankruptcy proceedings and other distressed situations. In this regard, the Debtor understands that Streambank is an expert in developing and executing processes designed to maximize the value of intangible assets such as the Intellectual Property. Streambank has successfully marketed and sold similar assets on behalf of retailers including Anchor Blue, Mervyn's, Circuit City, Movie Gallery, KB Toys, and Goody's LLC.

## Scope of Services

15.     As set forth more fully in the Engagement Letter, during the term of retention, Streambank shall provide the following services with respect to the Intellectual Property:

- Streambank shall work with the Debtor and its advisors to collect and secure all of the available information and other data concerning the Intellectual Property.

- Streambank shall prepare marketing materials designed to advertise the availability of the Intellectual Property for assignment and shall develop and execute a sales and marketing program designed to elicit proposals to acquire the Intellectual Property from qualified assignees.

- Streambank shall assist the Debtor in connection with the transfer of the Intellectual Property to such buyer or buyers who offer the highest consideration for such assets.

16.     Under the Engagement Letter, Streambank shall be the Debtor's exclusive agent to market and sell the Intellectual Property. The Debtor shall not sell or otherwise assign the Intellectual Property except in accordance with the terms of the Engagement Letter.

## Professional Compensation

17.     Subject to the Court's approval and pursuant to the terms and conditions of the Engagement Letter, Streambank intends to charge the Debtor as set forth below.

18.     For its efforts, Streambank shall be compensated based on the following commission structure (all such proposed terms, the "**Fee Structure**"):

4

a. A management fee in the amount of $10,000.
   b. Streambank shall be paid a commission equal to 10% of the first $100,000 of aggregate gross proceeds generated from the sale or other assignment of the Intellectual Property for which the management fee shall be applied as a credit, and a commission of 25% for any gross proceeds in excess of $100,000. In the event that the eventual acquirer of the Intellectual Property is Clive Lubner or any of his affiliates, Streambank shall only be entitled to a commission to the extent of any increase in the purchase price for such Intellectual Property from Mr. Lubner's initial bid. In such case Streambank's compensation will be the management fee plus 25% of the difference between the initial bid and the final purchase price.
   c. Any commissions due Streambank shall be paid in full immediately upon consummation of any transaction or transactions involving the sale or other assignment of the Intellectual Property from the proceeds of such transaction(s) notwithstanding any liens or other attachments on the Intellectual Property or the gross proceeds thereof.

19.     Streambank also shall be entitled to reimbursement by the Debtor of its reasonable out of pocket expenses incurred in connection with the provision of services under the Engagement Letter up to a maximum aggregate amount of $5,000.

20.     The Debtor submits that the Fee Structure is consistent with and typical of Streambank's normal and customary billing practices for comparable services in like-sized and similarly complex cases, both in and out of bankruptcy.

21.     As permitted by section 328(a) of the Bankruptcy Code, Streambank will be compensated on a transactional basis through payment of the commissions. Streambank shall not be required to maintain or provide detailed time records in connection with its retention. Such applications for fees and expenses will be paid by the Debtor pursuant to the terms of the Engagement Letter. The terms and conditions of the Engagement Letter, including the Fee Structure, were negotiated by the Debtor and Streambank at arm's-length and in good faith. The Debtor and Streambank respectfully submit that such terms and conditions are customary and reasonable for intellectual property disposition and sale engagements, both out of court and

5

within Chapter 11 cases. Accordingly, as part of this Application, the Debtor requests that this Court approve the terms of the Engagement Letter, including the Fee Structure as set forth therein and reflected in the Proposed Order.

## No Duplication of Services

22. Streambank's engagement will be limited to the discrete intellectual property disposition services described in the Engagement Letter. As such, the services of Streambank will complement, and not duplicate, the services of other professionals retained in this Chapter 11 case. Streambank has agreed to work cooperatively with the other professionals retained by the Debtor to avoid duplication of effort and ensure maximization of value of the services to be rendered.

## Streambank's Disinterestedness

23. Streambank does not believe that in rendering intellectual property disposition services in this Chapter 11 Case that Streambank is a "professional" required to be "disinterested" pursuant to section 101(14) of the Bankruptcy Code. Nevertheless, out of an abundance of caution, Streambank has reviewed its electronic database and, to the best of its knowledge and except to the extent disclosed in the Peress Declaration and exhibits thereto, Streambank (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, (b) does not hold or represent an interest adverse to the Debtor's estate, and (c) has no connection to the Debtor, its creditors, or their related parties that would negatively impact Streambank's disinterestedness.

24. Streambank will periodically review its files during the pendency of its engagement in this Chapter 11 case to ensure that no conflicts or other disqualifying circumstances exist or arise. To the extent that Streambank discovers any new relevant facts or

6

relationships bearing on the matters described herein during the period of Streambank's retention, Streambank will use reasonable efforts to file promptly a supplemental declaration.

**Basis for Relief**

25.     Section 327(a) of the Bankruptcy Code provides that a debtor, subject to court approval:

> May employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

26.     Section 328(a), in turn, provides that employment of a professional person under § 327 of the Bankruptcy Code may be "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."

27.     Bankruptcy Rule 2014 requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

**No Prior Request**

28.     No prior application for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtor respectfully requests the entry of an order, substantially in the form attached hereto as **Exhibit A**, (a) approving the employment and retention of Streambank as the Debtor's exclusive agent to market and sell the Intellectual Property, and (b) granting such other and further relief as the Court deems appropriate.

Dated: April 8, 2011

Respectfully submitted,

BERGER SINGERMAN, P.A.
*Counsel for the Debtor*
200 South Biscayne Blvd., Ste 1000
Miami, FL  33131
Telephone:  (305) 755-9500
Facsimile:   (305) 714-4340

By:  _/s/  Jordi Guso_
     Paul Steven Singerman
     Florida Bar No. 378860
     singerman@bergersingerman.com
     Jordi Guso
     Florida Bar No. 863580
     jguso@bergersingerman.com

3577365-3

# **EXHIBIT A**

## **Proposed Order**

3577365-3

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:

ROBB & STUCKY LIMITED LLLP,
a Florida Limited Liability Limited Partnership,[1]

       Debtor.

Case No. 08-11-bk-02801-CED
Chapter 11

_____/

### ORDER GRANTING DEBTOR'S APPLICATION TO EMPLOY AND RETAIN STREAMBANK, LLC AS ITS EXCLUSIVE AGENT TO MARKET AND SELL INTELLECTUAL PROPERTY

**THIS CASE** came on for hearing on the _____ day of _____, 2011 at _____ in Tampa, Florida upon the *Debtor's Application to Employ and Retain Streambank, LLC as its Exclusive Agent to Market and Sell Intellectual Property* (the "**Application**") [D.E. No. ___], and the *Declaration of David Peress on Behalf of Streambank, LLC as Proposed Exclusive Agent to Market and Sell Intellectual Property* (the "**Peress Declaration**") attached to the Application. The Application requests entry of an order approving the debtor-in-possession's employment of David Peress and Streambank as exclusive agent to market and sell intellectual property for the Debtor.

The Court has jurisdiction over the matters raised in the Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §

---

[1] The last four digits of the taxpayer identification number for the Debtor are 6415. The mailing address for the Debtor is 14550 Plantation Road, Fort Myers, FL 33912.

157(b)(2)(A).  The relief requested in the Application is in the best interests of the Debtor, its estate, and its creditors.  The Peress Declaration makes relevant disclosures as required by Fed. R. Bankr. P. 2014.  The Peress Declaration contains a verified statement as required by Fed. R. Bankr. P. 2014 demonstrating that David Peress and Streambank are disinterested as required by 11 U.S.C. § 327(a).  Pursuant to 11 U.S.C. § 327 and Fed. R. Bankr. P. 2014(a), the Court is authorized to grant the relief requested in the Application.  Upon the record herein, and after due deliberation thereon good and sufficient cause exists for the granting of the relief as set forth herein.  Accordingly, it is hereby

**ORDERED** that:

1.      The Application is **APPROVED**.

2.      The employment by the Debtor, as debtor-in-possession, of David Peress and Streambank as exclusive agent to market and sell intellectual property is **APPROVED** pursuant to 11 U.S.C. §§ 327(a) and 328.

3.      The Debtor is authorized to pay Streambank the following commission structure, as set forth in the Application:

      a.  A management fee in the amount of $10,000.
      b.  Commission equal to 10% of the first $100,000 of aggregate gross proceeds generated from the sale or other assignment of the Intellectual Property for which the management fee shall be applied as a credit, and a commission of 25% for any gross proceeds in excess of $100,000.  In the event that the eventual acquirer of the Intellectual Property is Clive Lubner or any of his affiliates, Streambank shall only be entitled to a commission to the extent of any increase in the purchase

price for such Intellectual Property from Mr. Lubner's initial bid. In such case Streambank's compensation will be the management fee plus 25% of the difference between the initial bid and the final purchase price.

c. Commissions shall be paid in full immediately upon consummation of any transaction or transactions involving the sale or other assignment of the Intellectual Property from the proceeds of such transaction(s) notwithstanding any liens or other attachments on the Intellectual Property or the gross proceeds thereof.

4.    The Debtor will also reimburse Streambank for all its reasonable out of pocket expenses incurred in connection with the provision of services under the Engagement Letter,[2] attached as Exhibit "C" to the Application, up to a maximum aggregate amount of $5,000.

5.    This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

**DONE** and **ORDERED** in Tampa, Florida, on _____.

_____
Caryl E. Delano
United States Bankruptcy Judge

Copy to:
Jordi Guso, Berger Singerman, P.A., 200 S. Biscayne Blvd., Ste. 1000, Miami, FL 33131. Additionally, Epiq Systems Bankruptcy Solutions, LLC will serve this Order on the Master Service List (the same parties that were served with the underlying Application).

---

[2] Capitalized terms not defined herein shall have the definitions ascribed to them in the Application.

## EXHIBIT B

## Declaration of David Peress

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:

ROBB & STUCKY LIMITED LLLP,
a Florida Limited Liability Limited Partnership,[1]

         Debtor.

Case No. 08-11-bk-02801-CED
Chapter 11

_____/

## DECLARATION OF DAVID PERESS IN SUPPORT OF APPLICATION TO EMPLOY AND RETAIN STREAMBANK, LLC AS ITS EXCLUSIVE AGENT TO MARKET AND SELL INTELLECTUAL PROPERTY

| | | |
|---|---|---|
| COMMONWEALTH OF MASSACHUSETTS | ) | |
| | ) | ss. |
| COUNTY OF NORFOLK | ) | |

I, David Peress, being duly sworn, hereby depose and say:

1.     I am a Principal of Streambank, LLC ("**Streambank**"), a consulting firm based in

Needham, Massachusetts focused on maximizing the value of intellectual property of distressed

companies. I submit this Declaration on behalf of Streambank (the "Peress Declaration") in

support of the *Debtor's Application to Employ and Retain Streambank, LLC as its Exclusive*

*Agent to Market and Sell Intellectual Property* (the "**Application**") filed by the Robb & Stucky

Limited LLLP (the **"Debtor"**) seeking entry of an order pursuant to sections 327(a) and 328 of

chapter 11, title 11, United States Code as amended (the "**Bankruptcy Code**") and Rule 2014 of

the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), authorizing the retention

and employment of Streambank to provide intellectual property disposition services to the

---

[1] The last four digits of the taxpayer identification number for the Debtor are 6415. The mailing address
for the Debtor is 14550 Plantation Road, Fort Myers, FL 33912.

Debtor under the terms and conditions set forth in the Application.[2]  Except as otherwise noted, I have personal knowledge of the matters set for herein.

## **Streambank Qualifications**

2.     ·Streambank is one of the leading intellectual property disposition consultants in the country.  Streambank has extensive experience in and an excellent reputation for providing high quality intellectual property disposition services to large and complex companies in bankruptcy proceedings and other distressed situations.

3.     The other principals of Streambank and I have personally participated in the sale of intellectual property ("**IP**") assets in bankruptcy proceedings and for creditor benefit in numerous cases.  Streambank marketed and sold through a multi-object auction the IP assets of Service Merchandise, including the store name, numerous proprietary brands, several trademarks and the debtor's data files.  Additionally, Streambank identified buyers of IP assets and negotiated sales for Anchor Blue, Movie Gallery/Hollywood Video, Mervyn's, Montgomery Ward, , KB Toys, Goody's Family Clothing, Circuit City, Whitehall Jewelers among others. Streambank's IP disposition experience also includes the sale of a substantial patent portfolio on behalf of the Collins & Aikman Post-Consummation Trust.  This portfolio was sold to numerous different buyers in a non-auction format over the course of 12 months.

## **Disinterestedness and Eligibility**

4.     In connection with the preparation of the Declaration, Streambank conducted a review of its contacts with the Debtor, and certain entities holding large claims against or interests in the Debtor that were made reasonably known to Streambank.  Streambank's review, completed

---

[2]Capitalized terms not defined herein shall have the definitions ascribed to them in the Application.

2

under my supervision, consisted of a query of such parties within an internal computer database containing names of individuals and entities that are present or recent former clients of Streambank.

5.    Based on the results of its review, Streambank does not have a relationship with any of such parties in matters related to this proceeding. Streambank has provided and could reasonably be expected to continue to provide services unrelated to the Debtor's case for the entities described above. To the best of my knowledge, no services have been provided to these parties-in-interest that involve their rights in the Debtor's case or in other matters relating to the Debtor, nor does Streambank's involvement in this case compromise its ability to continue such consulting services.

6.    Further, as part of its diverse practice, Streambank appears in numerous cases, proceedings and transactions that involve many different professionals, including attorneys, accountants and financial consultants, who may represent claimants and parties-in-interest in Debtor's chapter 11 case. Also, Streambank has performed in the past, and may perform in the future, intellectual property consulting services for various attorneys and law firms, some of whom maybe involved in this proceeding. In addition, Streambank has in the past, may currently and will likely in the future be working with or against other professionals involved in this case in matters unrelated to the Debtor and this case. Based on my current knowledge of the professionals involved, and to the best of my knowledge, none of these relationships create interests materially adverse to the Debtor in matters upon which Streambank is to be employed, and none are in connection with this chapter 11 case.

7.    Streambank is not a "creditor" with respect to fees and expenses of the Debtor within the meaning of section 101(10) of the Bankruptcy code. Further, neither I nor any other employee of

3

Streambank, to the best of my knowledge, is a holder of any outstanding debt instruments or shares of the Debtor's stock.

8.       As such, to the best of my knowledge, Streambank is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that Streambank:

> (a)     is not a creditor, equity security holder or insider of the Debtor;
>
> (b)     is not and was not an investment banker for any outstanding security of Debtor;
>
> (c)     has not been, within three years before the date of the filing of the Debtor's chapter 11 petition, (i) an investment banker for a security of the Debtor or (ii) an attorney for such an investment banker in connection with the offer, sale or issuance of a security of the Debtor's, and
>
> (d)     was not, within two years before the date of filing of the Debtor's chapter 11 petition, a director, officer, or employee of the Debtor or of any investment banker as specified in subparagraph (b) or (c) of this paragraph.

In addition, to the best of my knowledge and based upon the results of the relationship search described above and disclosed herein, Streambank neither holds nor represents an interest adverse to the Debtor within the meaning of section 327(a) of the Bankruptcy Code.

9.       It is Streambank's policy and intent to update and expand its ongoing relationship search for additional parties in interest in an expedient manner. If any new material relevant to facts of relationships are discovered or arise, Streambank will promptly file a Bankruptcy Rule 2014(a) Supplemental Declaration.

4

## Compensation

10.        Subject to this Court's approval, Streambank shall be compensated based on the

following commission structure:

- a. A management fee in the amount of $10,000.
- b. Streambank shall be paid a commission equal to 10% of the first $100,000 of aggregate gross proceeds generated from the sale or other assignment of the Intellectual Property for which the management fee shall be applied as a credit, and a commission of 25% for any gross proceeds in excess of $100,000. In the event that the eventual acquirer of the Intellectual Property is Clive Lubner or any of his affiliates, Streambank shall only be entitled to a commission to the extent of any increase in the purchase price for such Intellectual Property from Mr. Lubner's initial bid. In such case Streambank's compensation will be the management fee plus 25% of the difference between the initial bid and the final purchase price.
- c. Any commissions due Streambank shall be paid in full immediately upon consummation of any transaction or transactions involving the sale or other assignment of the Intellectual Property from the proceeds of such transaction(s) notwithstanding any liens or other attachments on the Intellectual Property or the gross proceeds thereof

11.        Streambank shall also be entitled to reimbursement by the Debtors of any out of pocket

expenses incurred in connection with the marketing and disposition of the Intellectual Property,

up to a maximum aggregate amount of $5,000.00.

12.        Streambank has requested, subject to the Court's approval, that the fees and expenses

incurred by Streambank be treated as an administrative expense of the Debtors' Chapter 11

estates and be paid by the Debtors in accordance with the terms of the Engagement Letter,

without the necessity of Streambank filing interim or final fee applications or otherwise

complying with the monthly, quarterly or final compensation procedures applicable to

professionals.

13.        To the best of my knowledge: (a) no commitments have been made or received by

Streambank with respect to compensation or payment in connection with these cases other than

in accordance with the provisions of the Bankruptcy Court; and (b) Streambank has no agreement with any other entity to share with such entity any compensation received by Streambank in connection with these chapter 11 cases. Streambank has received no compensation to date in connection with the matters described herein.

## 28 U.S.C § 1746 Declaration

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 8, 2011.

David Peress

**EXHIBIT C**

**Engagement Letter**



97 Chapel Street
Needham, MA 02492
781-444-4940

April 7, 2011

Mr. Kevin Regan
Chief Restructuring Officer
ROBB & STUCKY LIMITED LLLP
14550 Plantation Rd.
Fort Myers, FL 33912

Re: Proposal to Dispose the Intellectual Property Assets of Robb & Stucky

Dear Mr. Regan,

This letter sets forth the proposal of Streambank, LLC ("Streambank") to act as your exclusive agent for purposes of monetizing the intellectual property assets of Robb & Stucky Limited LLLP ("RS"), which assets include, without limitation, all of the trademarks, trade names, copyrights, domain names, URLs, telephone numbers, customer data, sourcing and other data, designs and drawings, etc. (collectively, the "Intellectual Property") of RS, wherever located and in whatever format. Streambank is an expert in developing and executing processes designed to maximize the value of intangible assets such as the Intellectual Property. Streambank has successfully marketed and sold similar assets on behalf of retailers including Mervyn's, Circuit City, Movie Gallery and Goody's Department Stores. Streambank is prepared to immediately commence working on behalf of RS to sell the Intellectual Property subject to the following terms and conditions:

1.  <u>Engagement</u>: Subject to Bankruptcy Court approval, Streambank shall be engaged as RSRS's exclusive agent to sell the Intellectual Property in accordance with sections 327, 328 and 363 of the Bankruptcy Code.
2.  <u>Scope of Services</u>: Streambank shall work with RS and its advisors to collect and secure all of the available information and other data concerning the Intellectual Property. Streambank shall prepare marketing materials designed to advertise the availability of the Intellectual Property for assignment and shall develop and execute a sales and marketing program designed to elicit proposals to acquire the Intellectual Property from qualified assignees. Streambank shall assist RS in connection with the transfer of the Intellectual Property to such buyer or buyers who offer the highest consideration for such assets.
3.  <u>Exclusivity</u>: Streambank shall be RS's exclusive agent to market and sell the Intellectual Property. RS shall not sell or otherwise assign the Intellectual Property except in accordance with the terms of this letter.
4.  <u>Compensation to Streambank</u>: For its efforts, Streambank shall be compensated based on the following commission structure:



a. A management fee in the amount of $10,000.

b. Streambank shall be paid a commission equal to 10% of the first $100,000 of aggregate gross proceeds generated from the sale or other assignment of the Intellectual Property which amounts shall be credited against the management fee, and a commission of 25% for any gross proceeds in excess of $100,000. In the event that the eventual acquirer of the Intellectual Property is Clive Lubner or any of his affiliates, Streambank shall only be entitled to a commission to the extent of any increase in the purchase price for such Intellectual Property from Mr. Lubner's initial bid. In such case Streambank's compensation will be the management fee plus 25% of the difference between the initial bid and the final purchase price

c. Any commissions due Streambank hereunder shall be paid in full immediately upon consummation of any transaction or transactions involving the sale or other assignment of the Intellectual Property from the proceeds of such transaction(s) notwithstanding any liens or other attachments on the Intellectual Property or the gross proceeds thereof.

5. <u>Expenses</u>: Streambank shall be entitled to reimbursement by RS of its reasonable out of pocket expenses incurred in connection with the provision of services hereunder up to a maximum aggregate amount of $5,000.

6. <u>Further Assurances</u>: Streambank and RS shall take such further actions including the filing and prosecution of a retention application, the filing and prosecution of any procedural or substantive motions or pleadings required to approve any proposed sales or assignments of the Intellectual Property, and the execution and delivery of any documentation required to effectuate any such sales or assignments.

Please confirm your agreement to engage Streambank to dispose of the Intellectual Property on the foregoing terms and conditions by executing this letter on the space provided below. If you have any questions concerning this letter, or the proposed scope of this project, please give the undersigned a call at (781)-444-4940. Thank you very much. We look forward to working with you.

Sincerely,
Streambank, LLC

By: _Gabriel Fried_
Gabriel Fried
Principal

Accepted:
Robb & Stucky Limted LLLP

By: _____ CRO