UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:

ROBB & STUCKY LIMITED LLLP,
a Florida Limited Liability Limited Partnership,[1]

    Debtor.

Case No. 08-11-bk-02801-CED
Chapter 11

_____/

**DEBTOR'S MOTION TO APPROVE (I) FORM OF ASSET PURCHASE
AGREEMENT AND BIDDING PROCEDURES, AND (II) SALE OF
DEBTOR'S INTEREST IN INTELLECTUAL PROPERTY
<u>SUBJECT TO HIGHER AND BETTER OFFERS</u>
(EXPEDITED HEARING REQUESTED ON OR BEFORE MAY 3, 2011)**

  Robb & Stucky Limited LLLP ("**Robb & Stucky**" or the "**Debtor**"), by and through

undersigned counsel, pursuant to 11 U.S.C. §§ 105(a) and 363(b) and Bankruptcy Rules 6004

and 2002, files this motion (the "**Motion**") seeking, *inter alia*, (i) an expedited hearing on

approval of the sale of the Debtor's right, title and interest in certain intellectual property and

related personal property (the "**Intellectual Property**"), free and clear of liens, if any, and (ii)

approval of the sale of the Debtor's right, title and interest in the Intellectual Property, pursuant

to the form of asset purchase agreement (the "**Asset Purchase Agreement**") attached hereto as

**<u>Exhibit "A"</u>**, subject to higher and better offers, and in support thereof states:

<u>**Background**</u>

  1.  On February 18, 2011 (the "**Petition Date**"), the Debtor filed a voluntary petition

for relief under Chapter 11 of the Bankruptcy Code.

---

[1] The last four digits of the taxpayer identification number for the Debtor are 6415.  The mailing address
for the Debtor is 14550 Plantation Road, Fort Myers, FL 33912.

2.      The Debtor is operating its business and managing its affairs as a debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

3.      On the Petition Date, the Debtor filed its *Emergency Motion for Approval of Procedures in Connection With the Sale of All or Substantially All of the Debtor's Assets, Authorization to Enter Into Stalking Horse Agreement in Connection Therewith, Approval of the Payment of Stalking Horse Protections, and the Setting of Related Auction and Hearing Dates* [D.E. No. 33] (the "**Bidding Procedures Motion**").

4.      A hearing on the Bidding Procedures Motion was held before the Court on February 23, 2011.  On the same day, the Court entered an order [D.E. No. 64] (the "**Bidding Procedures Order**") granting the Bidding Procedures Motion.

5.      Pursuant to the Bidding Procedures Order, (a) objections to the sale or to the agency agreement governing the terms of the sale (the "**Agency Agreement**") were due by March 4, 2011, (b) an auction was scheduled for March 7, 2011, and (c) a hearing to consider approval of the sale was scheduled for March 8, 2011.

6.      The Debtor conducted the auction on March 7, 2011.  The Debtor selected a joint venture comprised of Hudson Capital Partners, LLC and HYPERAMS, LLC (collectively, the "**Agent**") as the winning bidder for the rights to conduct inventory liquidation sales at the Debtor's stores in accordance with the Agency Agreement (the "**GOB Sale**").

7.      On March 8, 2011 the Court conducted a hearing to consider approval of the Debtor's selection of the Agent.  On March 9, 2011, the Court entered its *Order Approving Agency Agreement, Store Closing Sales and Related Relief* [D.E. No. 192] (the "**Sale Order**").

8.      On March 9, 2011, the Agent delivered the Guaranteed Amount (as defined in the Agency Agreement) to the Debtor.

9.      On March 10, 2011, the Agent commenced the GOB Sale at the Debtor's stores.

**Bidding Procedures**

10.      The Debtor has determined that it is in the best interests of its estate to sell the Debtor's rights, title and interests in the Intellectual Property to Lubner Family Partnership ("**Lubner**") for $125,000.00 (the "**Proposed Sale Price**"), pursuant to the Asset Purchase Agreement, and subject to higher and better offers (the "**Proposed Sale**").

11.      To ensure that the highest and best offer is made for the Debtor's rights, title and interests in the Intellectual Property, the Debtor has retained Streambank, LLC ("**Streambank**") as its exclusive agent to market and sell the Intellectual Property.  As part of its engagement, Streambank will provide notice of the Proposed Sale to parties identified by it as having or potentially having an interest in purchasing the Intellectual Property.  Such notice shall include, among other things, the date and time of the hearing to approve the Proposed Sale and the terms thereof so that any interested persons or entities can make offers in excess of the Proposed Sale Price in increments of at least $10,000.00.

12.      The Proposed Sale shall also be subject to the following bidding procedures (the "**Bidding Procedures**"):

> (a)      any bids by prospective buyers other than Lubner must be submitted in writing in substantially the same form as the Asset Purchase Agreement and must be received no later than May 24, 2011;

> (b)      any competitive bid must be accompanied by a non-refundable deposit in an amount no less than the greater of (i) $25,000 or (ii) ten percent (10%) of the amount of such competing bid;

(c)     all bids above the $125,000.00 purchase price specified in the Asset Purchase Agreement shall be made in increments of no less than $10,000.

13.     Accordingly, the Debtor seeks (i) an expedited hearing on approval of the form of the Asset Purchase Agreement and the Bidding Procedures, and (ii) a further hearing to consider the sale of the Debtor's rights, title and interests in the Intellectual Property.

<u>**Relief Requested and Basis Therefor**</u>

14.     The Court has the statutory authority to approve the form of the Asset Purchase Agreement and the Bidding Procedures, and to authorize the sale of the Debtor's rights, title and interests in the Intellectual Property free and clear of liens, if any, subject to higher and better offers.

15.     Bankruptcy Code section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts interpreting this statutory provision have held that proposed transactions should be approved under section 363(b)(1) when (a) they are supported by the sound business judgment of the debtor's management, (b) interested parties are provided with adequate and reasonable notice, (c) the sale price is fair and reasonable, and (d) the purchaser is acting in good faith. *See, e.g., In re Delaware & Hudson Ry. Co.,* 124 B.R. 169 (D. Del. 1991); *see also In re Parkstone Med. Info. Sys.,* 2001 WL 36189922 (Bankr. S.D. Fla. Oct. 16, 2001).

16.     Pursuant to section 363(f) of the Bankruptcy Code, a debtor-in-possession may sell all or any part of its property free and clear of any and all liens, claims, encumbrances or interests if (a) such sale is permitted under non-bankruptcy law, (b) the party asserting a lien, claim or interest consents to the sale, (c) the interest is a lien and the purchase price is greater

than the aggregate amount of all of the liens on the property, (d) the interest is subject to a bona fide dispute, or (3) the party asserting the claim or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest.  11 U.S.C. § 363(f).

### Sound Business Justification

17.    The Proposed Sale is the best way to maximize the value of the Debtor's rights, title and interests in the Intellectual Property. The Debtor, in the exercise of its sound business judgment, has determined that it is in the best interests of the estate to sell the Debtor's rights, title and interests in the Intellectual Property to Lubner subject to higher and better offers.

### Adequate Notice of the Proposed Sale

18.    The Debtor submits that interested parties will be provided with adequate notice of the Proposed Sale through Streambank, the Debtor's exclusive agent for the marketing and disposition of the Intellectual Property.  If Lubner is the eventual acquirer of the Intellectual Property, Streambank shall be entitled to a commission only to the extent of any increase in the Proposed Sale Price for the Intellectual Property from Lubner's initial bid; thus, Streambank is adequately incentivized to provide effective notice to potential purchasers and maximize the ultimate sale price for the Intellectual Property.

19.    Moreover, the Asset Purchase Agreement requires the following timeline, which complies with Bankruptcy Rule 2002:

(a)    On or before April 20, 2011, the Debtor shall have filed a motion with the Bankruptcy Court seeking authorization to sell the Intellectual Property pursuant to the Asset Purchase Agreement and specifying the Bidding Procedures applicable to the Proposed Sale;

(b)     On or before May 3, 2011, the Bankruptcy Court shall have entered an order substantially in the form attached hereto as **Exhibit "B"** (the "**Bidding Procedures Order**"):

(i)     Approving the Asset Purchase Agreement;

(ii)    Specifying the Bidding Procedures; and

(iii)   Setting a date for the auction and sale of no later than May 26, 2011.

(c)     The Bankruptcy Court shall have entered an order confirming the sale of the Intellectual Property (the "**Approval Order**") on or before May 26, 2011

**The Sale Price is Fair and Reasonable**

20.     Given that following the conclusion of the GOB Sale, the Debtor will be winding down its business, the Intellectual Property is likely to thereafter significantly diminish in value. Lubner has offered to purchase the Debtor's rights, title and interests in the Intellectual Property for $125,000.00.The Proposed Sale Price will be subject to higher and better offers which will confirm that the Proposed Sale Price is fair and reasonable, or allow the Debtor the ability to sell the Intellectual Property to another person or entity for a higher price.  In other words, the market will determine the fair price for the Debtor's rights, title and interests in the Intellectual Property. Clive Lubner, the former managing partner of the Debtor, is affiliated with Lubner.

**The Sale Was Negotiated in Good Faith**

21.     The Proposed Sale is the product of good faith, arms' length negotiations between the Debtor and Lubner.  The Debtor believes that the Proposed Sale Price is fair and reasonable. The Debtor requests a finding that Lubner is a "good faith purchaser" as contemplated by

section 363(m) of the Bankruptcy Code and that Lubner is entitled to all the benefits of a good faith purchaser under that statute.

### Sale Free and Clear of Liens

22.    To the extent necessary, the Debtor has obtained the consent of the Debtor's secured lien lenders to sell the Debtor's rights, title and interests in the Intellectual Property free and clear of any lien, claim, encumbrance or any interest therein.  *See* 11 U.S.C. § 363(f)(2).

### Waiver of Stay Provisions of Rule 6004(h)

23.    The Debtor requests that the Proposed Sale, once approved, be immediately effective upon entry of a written Order approving the Proposed Sale and that the fourteen (14) day stay of effectiveness of such an Order provided for in Bankruptcy Rule 6004(h) be waived.

### No Prior Request

24.    The Debtor has made no prior request for the relief requested herein to this or any other Court.

### Conclusion

25.    The Debtor reasonably believes that the sale of the Debtor's rights, title and interests in the Intellectual Property free and clear of liens, if any, and subject to higher and better offers, will benefit the Debtor's estate.

**WHEREFORE**, the Debtor respectfully requests that this Court set this Motion for an expedited hearing and enter an Order (i) approving the form of the Asset Purchase Agreement and the Bidding Procedures, and (ii) scheduling a sale of the Debtor's rights, title and interest in the Intellectual Property free and clear of liens, if any, subject to higher and better offers; and (iii) granting such other relief as the Court deems proper.

Dated: April 20, 2011                    Respectfully submitted,

                                        BERGER SINGERMAN, P.A.
                                        *Counsel for the Debtor*
                                        200 South Biscayne Blvd., Ste 1000
                                        Miami, FL  33131
                                        Telephone:  (305) 755-9500
                                        Facsimile:   (305) 714-4340

                                        By:  */s/  Jordi Guso*
                                             Paul Steven Singerman
                                             Florida Bar No. 378860
                                             singerman@bergersingerman.com
                                             Jordi Guso
                                             Florida Bar No. 863580
                                             jguso@bergersingerman.com

# EXHIBIT "A"

(Asset Purchase Agreement)

## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT (the "**Agreement**") is entered into by and between **ROBB & STUCKY, LIMITED LLLP**, a Florida limited liability limited partnership as debtor in possession in that certain Bankruptcy Case pending in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division (the "**Bankruptcy Court**"), entitled <u>In re: Robb & Stucky Limited LLLP</u>, *Case No. 08-11-bk-02801-CED* (the "**Seller**") and **LUBNER FAMILY PARTNERSHIP**, a Florida limited liability company (the "**Buyer**"), this 20th day of April, 2011, in contemplation of the following facts.

## R E C I T A L S

A.    The Seller filed a Voluntary Petition for Relief under Chapter 11, Title 11, United States Code, 11 U.S.C. §§101-1532 (the "**Bankruptcy Code**") on February 18, 2011.  The Seller is the Debtor In Possession in the Bankruptcy Case commenced by the filing of the Voluntary Petition, <u>In re: Robb & Stucky Limited, LLLP</u>, *Case No. 08-11-bk-02801-CED* (the "**Bankruptcy Case**").

B.    Pursuant to order of the Bankruptcy Court, the Seller is conducting liquidation or going out of business sales in its retail locations (the "**GOB Sales**").

C.    Buyer wishes to purchase and Seller wishes to sell the Seller's right, title and interest in certain intellectual property and related personal property specifically identified on **<u>Exhibit "1"</u>** attached hereto (the "**Intellectual Property**"), upon the terms and conditions set forth in this Agreement.

WHEREFORE in consideration of the foregoing and the mutual covenants and promises exchanged herein, the parties agree as follows:

1.  **Recitals:** The Recitals set forth above are true and correct and they are incorporated into the operative provisions of this Agreement.

2.  **Purchase and Sale**: At Closing, in consideration of Buyer's payment to Seller of the cash sum of $125,000.00, <u>plus</u> Buyer's performance of the obligations imposed pursuant to Paragraph 8 below (collectively, the "**Purchase Price**"), Seller shall sell, transfer, assign and convey to Buyer and Buyer shall purchase, the Seller's right title and interest in the Intellectual Property.

3.  **Deposit:**    Contemporaneous with the execution and delivery of this Agreement, Buyer shall deliver to Seller a deposit in the amount of $25,000 (the "**Deposit**") to be held in escrow in the trust account of Seller's counsel and (a) to be applied toward the Purchase Price at Closing, (b) to be delivered to the Seller as damages in the event Buyer is selected as the Winning Bidder or Back-Up Bidder (as each is defined in the Bidding Procedures Order (defined below)) and Buyer breaches this Agreement by failing to close, or (c) to be returned to Buyer only if Buyer is not selected as the Winning Bidder or the Back-Up Bidder.

4.  **Sale Free and Clear**. Pursuant to Section 363(f) of the Bankruptcy Code, the sale of the Intellectual Property to Buyer shall be free and clear of all liens, mortgages, security interests, charges, easements, leases, sub-leases, covenants, rights of way, options, claims, restrictions and encumbrances of any kind, debts, liabilities, commitments, responsibilities and obligations of any kind or

nature whatsoever, direct or indirect, absolute or contingent, matured or unmatured, whether accrued, vested or otherwise, known or unknown, foreseen or unseen (collectively, the "**Liens**").

5.     **No Representation**.     Buyer acknowledges that Buyer has had the opportunity to independently and personally inspect and conduct its due diligence with respect to the Intellectual Property and that Buyer has entered into this Agreement based upon its ability to conduct such due diligence and to make such examination and inspection.  The Intellectual Property is to be accepted by Buyer at Closing in its then present condition, "AS IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED."  Seller, Seller's agents, brokers, directors, officers or employees have not made and are not now making, and they specifically disclaim, any warranties, representations or guaranties of any kind or character, express or implied, oral or written, past, present or future, with respect to the Intellectual Property.  SELLER MAKES NO REPRESENTATIONS OR WARRANTIES (EXPRESS OR IMPLIED) OF ANY KIND TO BUYER, INCLUDING, WITHOUT LIMITATION, THE PHYSICAL CONDITION OF THE INTELLECTUAL PROPERTY OR ITS SUITABILITY FOR ANY PARTICULAR PURPOSE OR OF MERCHANTABILITY AND BUYER HAS RELIED ON ITS OWN DUE DILIGENCE AND INVESTIGATIONS OF THE INTELLECTUAL PROPERTY IN DETERMINING WHETHER TO ACQUIRE THE INTELLECTUAL PROPERTY.

6.    **Waiver of Stay.**  The parties agree that the value of the Intellectual Property is subject to rapid decline in view of the pending GOB Sales.  Accordingly, pursuant to Bankruptcy Rule 6004(h) the Seller shall request a waiver of the 14-day stay as provided in said Rule so that, subject to Bankruptcy Court approval, Buyer may close immediately on the purchase of the Intellectual Property.

7.    **Protections Under Section 363(m) and Section 363(n).**  The parties acknowledge and agree that the Buyer is a good faith purchaser as contemplated by Section 363(m) of the Bankruptcy Code.  Accordingly, the Seller will seek the entry of an order by the Bankruptcy Court finding that the Buyer is a purchaser of the Intellectual Property in good faith so that any reversal or modification on appeal of the order authorizing this sale will not affect the validity of the sale unless such order authorizing the sale is stayed pending appeal.  Furthermore, the parties acknowledge that they have not engaged in any activity which would support the avoidance of the sale pursuant to Section 363(n) of the Bankruptcy Code or which would support any other remedy as provided in said subsection.  Accordingly, the Seller shall seek the entry of an order by the Court in the Bankruptcy Case finding that this Agreement is not avoidable under Section 363(n) and that no other remedy may be sought as provided in said sub-section.

8.    **Consumer Privacy Ombudsman.**    The parties believe that the proposed sale of the Intellectual Property to Buyer is consistent with the policies of the Seller, attached hereto as **Exhibit "2,"** prohibiting the transfer of personally

identifiable information about individuals to persons that are not affiliated with the Debtor (the "**Privacy Policy**").  Buyer agrees:

    (a)    to adopt and comply with the Privacy Policy;

    (b)    to use information covered by the Privacy Policy for the same purposes as are specified in the Privacy Policy;

    (c)    that prior to making any material change to the Privacy Policy or to use or disclosure of any information protected by the Privacy Policy, the Buyer will notify the persons affected, by Mail or e-mail, and afford such persons the opportunity to opt-out of the changes to the Privacy Policy or the new uses of their data;

    (d)    to employ appropriate information security controls and procedures to protect the data covered by the Privacy Policy;

    (e)    to abide by all applicable U.S. laws and regulations.

The Seller shall seek approval of the sale of the Intellectual Property without the necessity for the appointment of a consumer privacy ombudsman as contemplated by Section 363(b)(1)(A); provided, however, that if the Bankruptcy Court orders the appointment of a consumer privacy ombudsman pursuant to Section 363(b)(1)(B), the Buyer shall pay the fees and expenses of such consumer privacy ombudsman in such amounts as allowed by the Bankruptcy Court.

9.    **Conditions Precedent.**  Buyer's Obligation to Purchase the Intellectual Property is subject to the following conditions precedent:

(a)    On or before April 20, 2011, the Debtor shall have filed a motion with the Bankruptcy Court seeking authorization to sell the Intellectual Property pursuant to this Agreement and specifying the bidding procedures applicable to the sale;

(b)    On or before May 3, 2011, the Bankruptcy Court shall have entered an order (the "Bidding Procedures Order"):

    (i)    Approving this Agreement;

    (ii)    Specifying the bid procedures; and

    (iii)    Setting a date for the auction and sale of no later than May 25, 2011.

(c)    The Bankruptcy Court shall have entered an order confirming the sale of the Intellectual Property to the Buyer (the "Approval Order") pursuant to this Agreement on or before May 26, 2011, which order shall provide for a waiver of the 14-day stay provided by Bankruptcy Rule 6004; and which order shall find that the Buyer is a good faith p entitled to the protection of Section 363(m) of the Bankruptcy Code; and which shall further find that the Transactions contemplated by this Agreement are not avoidable or subject to any other remedies under Section 363(n) of the Bankruptcy Code.

Buyer, but not Seller, may waive any conditions precedent in this paragraph in its sole discretion.

10.    **Closing.**  The closing shall take place at 14550 Plantation Road, Fort Meyers, FL. 33912 at 10:00 a.m. on the second business day following the entry of the Approval Order.

11.    **Certain Deliveries of Seller**.   At the Closing, the Seller shall, at its expense, deliver the following to the Buyer:

(a)    an executed Bill of Sale;

(b)    a certified copy of the Approval Order;

(c)    duly executed and acknowledged (as applicable) assignments of the U.S. trademark registrations and applications and U.S. patents and patent applications, included in the Intellectual Property contemplated to be acquired pursuant to the terms hereof, in a form reasonably acceptable to Buyer and suitable for recording in the U.S. Patent and Trademark Office, as well as assignment documents for trademark and/or patent rights in other jurisdictions as reasonably requested by Buyer.

(d)    such other documents of assumption and adequate assurances as may be required by the Approval Order; and

(e)    such other documents as Buyer may reasonably require, including, without limitation, as needed to convey to Buyer the Intellectual Property, including the website content, toll free

numbers, and domain names included in the Intellectual Property.

12. **Certain Deliveries of Buyer**. At the Closing, (i) Seller's counsel shall deliver the Deposit to Seller, and (ii) Buyer shall, at Buyer's expense, deliver to the Seller:

   (a)   By wire transfer of immediately available funds to the accounts designated by the Buyer the sum of $100,000.00;

   (b)   such other documents of assumption and adequate assurances may be required by the Approval Order; and

   (c)   such other documents as Seller may reasonably require.

13. **Transfer of Software and Electronically Stored Data.** Commencing as of the Closing, Seller shall take all actions reasonably necessary to deliver possession of the Intellectual Property to the Buyer, including, without limitation, enabling Buyer to:

   (a)   take possession of servers and related equipment which Seller no longer requires for its continuing operation;

   (b)   obtain the transfer of applicable software and software licenses; and

   (c)   transfer to Buyer by appropriate means all electronically stored software and data.

The parties will cooperate to enable Seller such continued use of the Intellectual Property as is necessary for its operation as debtor in possession in the Bankruptcy Case.

14. **Agreement Subject to Higher Bid**.  The parties acknowledge and understand that this Agreement is subject to the Seller soliciting and receiving higher or better offers for the purchase of the Intellectual Property pursuant to the bidding procedures approved by the Bankruptcy Court.  Seller agrees to request, as part of the bidding procedures to be approved by the Bankruptcy Court, the following:

    (a)    any bids by other prospective buyers must be received in writing no later than May 23, 2011;

    (b)    any competitive bid must be accompanied by a non-refundable deposit in an amount no less than the greater of (i) $25,000 or (ii) ten percent (10%) of the amount of such competing bid;

    (c)    all bids above the $125,000.00 purchase price specified herein shall be made in increments of no less than $10,000.

15. **Assignability.**  Buyer may assign its rights and obligations under this Agreement to an affiliate (as defined in Section 101(2) of the Bankruptcy Code).

16. **Binding Effect.  This Agreement is binding upon and shall inure to the** benefit of the parties hereto, their successors and assigns.  Specifically, but without limitation, upon the entry of the Approval Order, this Agreement and the Approval Order shall be binding upon the Seller and its bankruptcy estate even if:

(a)     the Bankruptcy Case is dismissed;

(b)     a trustee is appointed in the Bankruptcy Case;

(c)     the Bankruptcy Case is converted to a case under Chapter 7 of the Bankruptcy Code.

17.     **Access to Records and Information**.  Between the Closing Date and the fifth anniversary of the Closing Date, Seller shall have reasonable access to all of the books and records relating to the Intellectual Property to the extent that such access may reasonably be required by Seller in connection with the completion of the GOB Sales or the administration of the Bankruptcy Case.  Such access shall be afforded by Buyer upon receipt of reasonable advance notice and during normal business hours; provided, however, that any such access shall be conducted in such a manner as not to interfere unreasonably with the operation of the business of Buyer.

18.     **General Provisions**.

(a)     **Expenses**.  Except as set forth in this Agreement and whether or not the transactions are consummated, each party shall bear all costs and expenses incurred or to be incurred by such party in connection with this Agreement and the consummation of the Transactions.

(b)     **No Survival of Representations and Warranties**.  The parties agree that the representations and warranties contained in this Agreement shall not survive the Closing hereunder, and none of

the parties shall have any liability to each other after the Closing for any breach thereof.

(c)     **No Third Party Beneficiaries:**  This Agreement is for the sole benefit of the parties hereto and their permitted assigns and nothing herein expressed or implied shall give or be construed to give to any Person, other than the parties hereto and such assigns, and legal or equitable rights hereunder.

(d)     **Remedies**. Except as otherwise expressly provided in this Agreement, any and all remedies expressly conferred upon a party to this Agreement shall be cumulative with, and not exclusive of, any other remedy contained in this Agreement, at law or in equity and the exercise by a party to this Agreement of any one remedy shall not preclude the exercise by it of any other remedy. In addition, the parties agree that irreparable damage would occur in the event that the parties fail to perform their obligations in accordance with the terms of this Agreement and each party shall be entitled to specific performance in such event, in addition to any other remedy at law or in equity.

(e)     **Interpretation; Exhibits and Schedules; Certain Definitions**. The headings contained in this Agreement, in any Exhibit or Schedule hereto and in the table of contents to this Agreement

are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement. All Exhibits and Schedules annexed hereto or referred to herein are hereby incorporated in and made a part of this Agreement as if set forth in full herein. Any capitalized terms used in any Schedule or Exhibit but not otherwise defined therein, shall have the meaning as defined in this Agreement. When a reference is made in this Agreement to a Section, Exhibit or Schedule, such reference shall be to a Section of, or an Exhibit or Schedule to, this Agreement unless otherwise indicated.

(f)    **Counterparts**. This Agreement may be executed in one or more counterparts, all of which shall be considered one and the same agreement, and shall become effective when one or more such counterparts have been signed by each of the parties and delivered to the other parties.

(g)    **Entire Agreement**. This Agreement, along with the Schedules and Exhibits thereto, contain the entire agreement and understanding among the parties hereto with respect to the subject matter hereof and supersede all prior agreements and understandings relating to such subject matter. None of the parties shall be liable or bound to any other party in any manner by any representations, warranties or covenants

relating to such subject matter except as specifically set forth herein.

(h) **Severability**. If any provision of this Agreement (or any portion thereof) or the application of any such provision (or any portion thereof) to any Person or circumstance shall be held invalid, illegal or unenforceable in any respect by a court of competent jurisdiction, such invalidity, illegality or unenforceability shall not affect any other provision hereof (or the remaining portion thereof) or the application of such provision to any other Persons or circumstances.

(i) **Exclusive Jurisdiction**. The Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the Transactions. Any and all claims, actions, causes of action, suits and proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court.

(j) **Governing Law**. This Agreement shall be governed by and construed in accordance with the Bankruptcy Code and the internal laws of the State of Florida applicable to agreements

made and to be performed entirely within such State, without regard to the conflicts of law principles of such State.

(k)   **Waiver of Jury Trial**. Each party hereby waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury with respect to any litigation directly or indirectly arising out of, under or in connection with this Agreement or the Transactions. Each party (a) certifies that no representative, agent or attorney of any other party has represented, expressly or otherwise, that such other party would not, in the event of litigation, seek to enforce the foregoing waiver and (b) acknowledges that it and the other parties hereto have been induced to enter into this Agreement, as applicable, by, among other things, the mutual waivers and certifications in this Section.

19.   **Certain Definitions.**

(a)   *"Bankruptcy Code"* **means** title 11 of the United States Code.

(b)   *"Bankruptcy Court"* means the United States Bankruptcy Court for the Middle District of Florida, Tampa Division.

(c)   *"Final Order"* means an order of the Bankruptcy Court or other court of competent jurisdiction:

(1)(a)   as to which no appeal, notice of appeal, motion to amend or make additional findings of fact, motion or alter or

amend judgment, motion for rehearing or motion for new trial has been timely filed or, if any of the foregoing has been timely filed, it has been disposed of in a manner that upholds and affirms the subject order in all material respects without the possibility for further appeal or rehearing thereon; (b) as to which the time for instituting or filing an appeal, motion for rehearing or motion for new trial shall have expired; and (c) as to which no stay is in effect.

(d)     *"Including"* means including, without limiting the generality of the foregoing.

(e)     *"Liabilities"* means, as to any Person, all debts, adverse claims, liabilities, commitments, responsibilities and obligations of any kind or nature whatsoever, direct, indirect, absolute or contingent, matured or unmatured of such Person, whether accrued, vested or otherwise, whether known or unknown, foreseen or unforeseen, and whether or not actually reflected, or required to be reflected, in such Person's balance sheets or other books and records.

(f)     *"Liens"* means mortgages, liens, security interests, charges, easements, leases, subleases, covenants, rights of way, options, claims, restrictions or encumbrances of any kind.

    (g)    *"Person"* means any individual, firm, corporation, partnership, limited liability company, trust, joint venture, Governmental Entity or other entity.

    (h)    *"Privacy Policy"* means Sellers' privacy policies attached as Exhibit "2".

    (i)    *"Transactions"* means the transactions contemplated by this Agreement.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date and year first above written.

**SELLER:**                                        **BUYER:**

ROBB & STUCKY, LIMITED LLLP,          LUBNER FAMILY PARTNERSHIP, a
Florida limited liability partnership          Florida limited liability company

By: _____          By: _____

Its: _____          Its: _____

## EXHIBIT "1"

## (Intellectual Property)

      An inventory of the Intellectual Property that is subject of the sale shall be filed with the Court no later than two (2) days prior to the hearing to consider the approval of the Bidding Procedures in connection with the sale.

EXHIBIT "2"

(Privacy Policy)

# ROBB & STUCKY

SHOP      DESIGN      HOSPITALITY      CATALOGS      VIDEOS      ABOUT US

enter your email address     SUBSCRIBE



*Privacy & Security Policy*

**Robb & Stucky is committed to safeguarding your privacy online.**

Any information you provide to us will be stored in secured servers with restricted access.

We will honor our customer's requests not to receive future communication and we will not sell, rent or share your personal email address.

We occasionally share the postal addresses of customers with our affiliated companies and select partner companies whom we deem trustworthy. These partners may contact you with products or services that may be of interest to you. Your personal email address will not be shared, sold, or rented.

If you would like to be removed from our email list, please click here.

If you would like to be removed from our postal list, please click here.

We may disclose specific personal information based on a good-faith belief that such disclosure is necessary to comply with or conform to the law (subpoenas, warrants) or that such disclosure is necessary to protect the users of the web site or the public.

All credit transactions occur in a secure area of our site. The transfer of sensitive information is protected by the highest standard of encryption technology available on the Internet.

enter keyword or item #     SEARCH

ABOUT US      CAREERS      HOSPITALITY DIVISION      CULINARY CENTER      CEU      PRESS RELEASES      LOCATIONS      JOIN OUR MAILING LIST

How to Order  |  Financing  |  Shipping & Processing  |  Returns & Exchanges  |  Privacy & Security Policy  |  Site Map  |  Contact Us at 1.866.399.7078

Copyright 2008 Robb & Stucky Limited, LLLP     IB 0000745     Credits

## EXHIBIT "B"

(Bidding Procedures Order)

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:

                                               Case No. 08-11-bk-02801-CED

ROBB & STUCKY LIMITED LLLP,        Chapter 11
a Florida Limited Liability Limited Partnership,[1]

          Debtor.

_____/

**ORDER (I) APPROVING FORM OF ASSET PURCHASE AGREEMENT AND
BIDDING PROCEDURES, (II) SCHEDULING AUCTION SALE OF DEBTOR'S
INTERESTS IN INTELLECTUAL PROPERTY, AND
(III) SETTING FINAL SALE HEARING**

**THIS MATTER** came before the Court on May __, 2011 at __:__ a./p.m. in Tampa, Florida upon the *Debtor's Motion to Approve (I) Form of Asset Purchase Agreement and Bidding Procedures, and (II) Sale of Debtor's Interests in Intellectual Property Subject to Higher and Better Offers* [D.E. No. ___] (the "Sale Motion").[2]  The Court has reviewed the Sale Motion, heard representations of counsel, and being otherwise fully advised in the premises, finds good cause for granting of the relief requested. Accordingly, the Court **ORDERS**:

1. The Motion is **GRANTED** as set forth below.

2. The form of Asset Purchase Agreement attached to the Sale Motion as **Exhibit "A"** is **APPROVED**.

3. The following Bidding Procedures are **APPROVED**:

---

1 The last four digits of the taxpayer identification number for the Debtor are 6415.  The mailing address for the Debtor is 14550 Plantation Road, Fort Myers, FL 33912.
2 Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Sale Motion.

(a)    Any bids by prospective buyers other than Lubner must be submitted so as to be actually received later than May 24, 2011 **at 4:00 p.m. (prevailing Eastern Time)** (the "**Bid Deadline**") by (i) the Debtor, c/o FTI Consulting, Inc., 3 Times Square, New York, NY 10036, Attn: Kevin F. Regan, CRO; (ii) the Debtor, 14550 Plantation Road, Fort Myers, FL 33912, Attn: Brian Crowley, Chief Financial Officer; (iii) counsel to the Debtor, Berger Singerman P.A., 200 South Biscayne Blvd., 10th Flr, Miami, FL 33131, Attn. Paul Steven Singerman, Esq. and Jordi Guso, Esq.; and Streambank, LLC, 97 Chapel Street, Needham, MA 02492, Attn: David Peress.

(b)    Any competitive bid must be evidenced by a signed Asset Purchase Agreement, marked to show changes from the original, and accompanied by a non-refundable deposit in an amount no less than the greater of (i) $25,000 or (ii) ten percent (10%) of the amount of such competing bid.

(c)    All bids above the $125,000.00 purchase price specified in the Asset Purchase Agreement shall be made in increments of no less than $10,000.

(d)    If one or more qualified bids (other than the Asset Purchase Agreement submitted by Lubner) are received by the Bid Deadline, the Debtor will conduct an auction (the "**Auction**") to determine the highest and best qualified bid.

(e)    The Auction shall take place on May __, 2011 at 10:00 a.m. (prevailing Eastern Time) at the offices of Berger Singerman, P.A., 350 East Las Olas Boulevard, Suite 1000, Fort Lauderdale, Florida 33301.

(f)     All bids shall be irrevocable through the Sale Hearing (as defined below); provided, however, that if such bid is accepted as the successful bid or the backup bid (as set forth below), such bid shall continue to remain irrevocable until the Closing.

(g)     Prior to the start of the Auction, the Debtor will advise all qualified bidders of what the Debtor believes to be the highest or otherwise best qualified bid(s).  Only qualified bidders are eligible to participate in the Auction.  Bidding at the Auction shall begin initially with the highest or otherwise best bid and shall subsequently continue in such minimum increments as the Debtor determines.

(h)     Bidding will continue with respect to the Auction until the Debtor determines that it has received the highest or otherwise best bid(s) for the Intellectual Property.  After the Debtor so determines, it will close the Auction.  The Debtor will then determine and announce which sale has been determined to be the highest or otherwise best bid and, therefore, declared the successful bid.

(i)     If for any reason the entity or entities that submit(s) the highest or otherwise best bid fails to consummate the transaction contemplated thereby, the offeror of the second highest or best bid will automatically be deemed to have submitted the highest or best bid and to the extent such offeror and the Debtor consents, the Debtor and such offeror are authorized to effect a transaction with such offeror(s) as soon as is commercially reasonable.  If such failure to consummate the transaction is

the result of a breach by the winning offeror, the Debtor reserves the right to seek all available damages from the defaulting offeror.

    (j)    No provision for a break-up fee or expense reimbursement exists in connection with the Asset Purchase Agreement or the Auction, and neither Lubner nor any bidder that is qualified in connection with the Auction shall have any claim with respect thereto.

4.  The Court will conduct a hearing on May __, 2011 at ____:____ ___.m. (the "**Sale Hearing"**) to consider approval of the sale of the Debtor's rights, title and interests in the Intellectual Property, free and clear of any and all liens, claims, encumbrances or interests, and subject to higher and better offers.

5.  The Court will enter a separate Order approving the Sale after conclusion of the Sale Hearing.

6.  The Court retains jurisdiction for the purposes of interpreting and enforcing this Order.

**DONE** and **ORDERED** in Tampa, Florida, on _____.


_____
Caryl E. Delano
United States Bankruptcy Judge


Copy to:
Jordi Guso, Berger Singerman, P.A., 200 S. Biscayne Blvd., Ste. 1000, Miami, FL 33131. Additionally, Epiq Systems Bankruptcy Solutions, LLC will serve this Order on the Master Service List and all creditors and parties in interest as required by Bankruptcy Rule 2002(a)(2).